**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Garth W. KUNKLER,
Defendant-Appellant.**

**No. 80–1710.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 9, 1981.

Decided June 8, 1982.

Douglas Brown, San Diego, Cal., for defendant-appellant.

Eve D. Bermingham, Asst. U. S. Atty., on brief; M. James Lorenz, U. S. Atty., San Diego, Cal., for plaintiff-appellee.

Before ELY, FLETCHER, and REINHARDT, Circuit Judges.

ELY, Circuit Judge:

In a bench trial on stipulated facts, appellant Garth Kunkler was convicted of conspiring to possess with the intent to distribute, and aiding and abetting the distribution of, a controlled substance in violation of 18 U.S.C. § 2; 21 U.S.C. §§ 841(a)(1), 846. Kunkler asserts a variety of errors on appeal, relating for the most part to the admission at his trial and over his objection of evidence discovered in the course of the seizure[1] and search of his residence. We affirm.

## FACTS

In early 1980 Drug Enforcement Administration (DEA) agents were conducting an undercover investigation in Yuma, Arizona, attempting to infiltrate the higher levels of a cocaine dealing operation. After several cocaine transactions with lower-echelon intermediaries, the principal DEA undercover operative, Special Agent Andresano, arranged to meet a middle-level dealer in a San Diego area cocaine distribution operation. In March 1980, having gained the suspects' trust, Special Agent Andresano met the dealer, John Jacobs, to discuss a steady, large-scale supply.

Undercover DEA agents observed Jacobs arrive at the meeting place, a Carlsbad, California, apartment complex, in a brown van. After discussing various aspects of the planned cocaine transaction, Jacobs left Andresano in apartment "A" and returned shortly with approximately one ounce of cocaine. Andresano paid Jacobs $2300 and "ordered" six additional ounces of cocaine for delivery in the immediate future.

Eight days later Andresano returned to Carlsbad and contacted Jacobs, indicating that he wanted to purchase only two ounces instead of six. Again Andresano waited in apartment "A" for the arrival of Jacobs with the cocaine. This time, however, undercover DEA agents watched Jacobs drive his van to Kunkler's residence in Carlsbad. Kunkler met Jacobs outside and they walked together back into the house. When Jacobs left Kunkler's house, he drove in a circuitous manner back to the apartment complex, apparently trying to elude or detect surveillance. He went first to apartment "D", where he resided, carrying a package wrapped in white paper. Ten minutes later Jacobs went upstairs to apartment "A" carrying a dark object, which, when delivered to Andresano, was found to contain approximately one ounce of cocaine. Jacobs then returned to apartment "D" to obtain the other ounce. Andresano paid Jacobs $4400 and they discussed future sales of even larger quantities. After Andresano left with the cocaine, other DEA agents observed Jacobs return to Kunkler's house.

Andresano thereafter arranged to purchase twelve ounces of cocaine one week hence. Pursuant to the *modus operandi*, Andresano arrived in Carlsbad with the money, telephoned Jacobs, and was told to go to apartment "A". Jacobs left in his van and drove, again circuitously, to Kunkler's house, where he stayed for about fifteen minutes. Jacobs returned to apartment "D", went back out to the van, and then to apartment "A", where he delivered a one-ounce bag of cocaine to Andresano. After a field-test was performed, Jacobs made another trip to the van and returned with another bag of cocaine. Jacobs then asserted that he wanted the balance of the money "up front" before delivering the rest of the cocaine. In the ensuing discussion Andresano told Jacobs he needed to consult with his

---

1. Kunkler's residence was "secured" for four hours while Drug Enforcement Administration agents waited for the issuance and arrival of a search warrant. The warrant, when served and executed, revealed the incriminating evidence Kunkler complains of. We draw no Fourth Amendment distinction between "searches" and "seizures" of residences. Seizures of residences, like searches, require a warrant, unless exigent circumstances are present. *See United States v. Allard*, 634 F.2d 1182, 1185 (9th Cir. 1980) (*Allard II*); *United States v. Griffin*, 502 F.2d 959, 960–61 (6th Cir.) (per curiam), *cert. denied*, 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 645 (1974). Thus, we analyze the initial seizure as if it were a search. *See* part IV *infra*. Of course, after a seizure, as was done here, a warrant must be procured in order to search.

associate waiting in the car outside before "fronting" the entire amount.

Outside, Andresano and his colleague, also an undercover DEA agent, decided to terminate the undercover operation. Several agents then entered the apartments, arrested the occupants and, with their permission, searched the premises and the van. No substantial quantity of cocaine was found, though much related evidence was discovered and seized. One of the agents left to obtain a search warrant for Kunkler's house, believing that the balance of the twelve ounce order was still in Kunkler's possession.

Within ten minutes of Jacobs' arrest other DEA agents observed Kunkler and a companion nervously looking up and down the street in front of Kunkler's house for about five minutes. Fearful that Kunkler would become suspicious if Jacobs did not return to pick up more cocaine or deliver money, and thus might flee or destroy evidence, the agents knocked, announced their identities, and, after receiving no answer, entered through the front door, which was ajar. The agents found Kunkler upstairs, searched him, counted his money, returned it, and then "secured" the premises for four hours while awaiting the arrival of a search warrant.

The search warrant affidavit recounted the foregoing facts, although the affiant police officer failed to reveal the source of his knowledge. When the warrant arrived, a search of Kunkler's house revealed drug paraphernalia and an ounce of cocaine.[2]

The District Court denied a motion to suppress the evidence found in Kunkler's home and, in a bench trial, convicted him of conspiracy to possess cocaine with intent to distribute and aiding and abetting the distribution of cocaine.

## ISSUES

1. Did the affiant police officer's failure to disclose the source of his information invalidate the search warrant when the officer related the involvement of fellow DEA undercover agents in the drug transactions?

2. Was the omission from the affidavit of the fact that Jacobs had returned to his van prior to delivery of the cocaine material to the magistrate's finding of probable cause?

3. Did the affidavit show probable cause to search Kunkler's home?

4. Did exigent circumstances exist sufficient to justify the warrantless entry and securing of Kunkler's home?

## DISCUSSION

I. *Failure to Disclose Source*

■ This court must look at affidavits for search warrants in a "commonsense and realistic fashion." *United States v. Ventresca*, 380 U.S. 102, 108–09, 85 S.Ct. 741, 745–46, 13 L.Ed.2d 684 (1965). Kunkler contends the agent's affidavit was defective because it "may be interpreted to mean that his source of information was any number of people," and the reliability of these possible sources was not shown. This contention is without merit. It is readily apparent that the undercover officers involved in the case were the source of the information. Police officers are considered reliable and their reliability need not be independently demonstrated. *See id.* at 111, 85 S.Ct. at 747; *Brooks v. United States*, 416 F.2d 1044, 1049 (5th Cir. 1969), cert. denied, 400 U.S. 840, 91 S.Ct. 81, 27 L.Ed.2d 75 (1970); *United States v. Desist*, 384 F.2d 889, 896–97 (2d Cir. 1967), aff'd, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969). *See also Chin Kay v. United States*, 311 F.2d 317, 320 (9th Cir. 1962).

II. *Omission from the Affidavit*

■ Kunkler contends that the omission from the affidavit of the fact that Jacobs returned to his van before delivering the cocaine to Andresano invalidated the search

---

**2.** The prosecution chemist's testimony regarding the cocaine was inadvertently omitted from the Stipulation upon which Kunkler was tried.

Hence, he was acquitted of the possession charge.

warrant because if the magistrate had known this fact "he may well have assumed that the contraband was in the Ford van rather than at the defendant's home." This contention is frivolous because if the omitted information is considered together with the other information in the affidavit, there was still ample probable cause to issue a warrant. *United States v. Lefkowitz*, 618 F.2d 1313, 1317 (9th Cir.), *cert. denied*, 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 27 (1980); *see Franks v. Delaware*, 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978). On the facts of this case, it is beyond dispute that the affiant's omission was immaterial.

### III. *Probable Cause*

■ Kunkler contends that the affidavit for the warrant did not establish probable cause. As a reviewing court we are to pay substantial deference to judicial determinations of probable cause. *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 111, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723 (1964); *United States v. Bowers*, 534 F.2d 186, 188–89 (9th Cir.) (per curiam), *cert. denied*, 429 U.S. 942, 97 S.Ct. 360, 50 L.Ed.2d 311 (1976). Measured against this standard, we find that the search warrant was properly issued. The dealer's statements implicating another person as his "source" and his repeated trips to Kunkler's home followed by the production of cocaine were sufficient for the magistrate to conclude that criminal activity was probably shown. *United States v. Fried*, 576 F.2d 787, 790 (9th Cir.), *cert. denied*, 439 U.S. 895, 99 S.Ct. 255, 58 L.Ed.2d 241 (1978). *See Rocha v. United States*, 387 F.2d 1019, 1022–23 (9th Cir. 1967), *cert. denied*, 390 U.S. 1004, 88 S.Ct. 1247, 20 L.Ed.2d 104 (1968) (similar facts held to give arresting

officers reasonable cause to believe defendant was or had been violating federal laws).

### IV. *Securing of Kunkler's Home*

Finally, Kunkler contends that even if the officers had probable cause, exigent circumstances sufficient to justify the failure to obtain a search warrant before "seizing" the house were absent in this case. Since the prohibitions of the Fourth Amendment apply fully to "securing" or "seizing" a residence as well as actually searching it, *see United States v. Allard*, 634 F.2d 1182 (9th Cir. 1980) (*Allard II*), we must determine whether the initial seizure of Kunkler's house was justified under an exception to the warrant requirement.

Our discussion must begin with the premise that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) (footnotes omitted); *see Vale v. Louisiana*, 399 U.S. 30, 35, 90 S.Ct. 1969, 1972, 26 L.Ed.2d 409 (1970); *Warden v. Hayden*, 387 U.S. 294, 298–300, 87 S.Ct. 1642, 1645–1646, 18 L.Ed.2d 782 (1967); *McDonald v. United States*, 335 U.S. 451, 454–56, 69 S.Ct. 191, 192–93, 93 L.Ed. 153 (1948); *Johnson v. United States*, 333 U.S. 10, 14–17, 68 S.Ct. 367, 369–370, 92 L.Ed. 436 (1948).

■ One such exception to the warrant requirement is invoked by "exigent circumstances." *See McDonald*, 335 U.S. at 455, 69 S.Ct. at 193. When police officers, acting on probable cause and in good faith,[3] reasonably believe from the totality of circumstances that (a) evidence or contraband will imminently be destroyed or (b) the

---

**3.** Good faith means not acting with the intent improperly to circumvent the warrant requirement by purposefully precipitating a situation, "through illegal conduct," in which the destruction of evidence or contraband is likely. *Allard II*, 634 F.2d at 1187. In *United States v. Allard*, 600 F.2d 1301, 1304 (9th Cir. 1979) (*Allard I*), we affirmed a district court's finding that exigent circumstances did not exist to justify a warrantless intrusion:

[A warrantless] search cannot be justified solely because an agent knows that there is contraband on the premises.

[The officers] had little reason to suspect that any evidence in the room would be destroyed. They had no facts on which to base a reasonable belief that [the occupant] knew of [his accomplice's] arrest or had been instructed to destroy the cocaine. They did not

nature of the crime or character of the suspect(s) pose a risk of danger to the arresting officers or third persons, exigent circumstances justify a warrantless entry, search or seizure[4] of the premises. *See United States v. Gardner,* 627 F.2d 906, 910–12 (9th Cir. 1980); *United States v. Spanier,* 597 F.2d 139, 140 (9th Cir. 1977); *United States v. Fulton,* 549 F.2d 1325, 1327 (9th Cir. 1977); *United States v. Grummel,* 542 F.2d 789, 791 (9th Cir. 1979) (per curiam), *cert. denied,* 429 U.S. 1051, 97 S.Ct. 763, 50 L.Ed.2d 767 (1977); *United States v. Guidry,* 534 F.2d 1220, 1222–23 (6th Cir. 1976); *United States v. McLaughlin,* 525 F.2d 517, 520–21 (9th Cir. 1975), *cert. denied,* 427 U.S. 904, 96 S.Ct. 3190, 49 L.Ed.2d 1198 (1976); *United States v. Curran,* 498 F.2d 30, 35–36 (9th Cir. 1974); *Theobald v. United States,* 371 F.2d 769, 771 (9th Cir. 1967).

■ In light of the facts here presented—the reasonable inferences that Kunkler was Jacobs' main supplier, that Kunkler was extremely wary and cautious in his dealings, that Kunkler was expecting Jacobs to return shortly, and that Kunkler's expectant conduct upon Jacobs' delay indicated his suspicion that something had gone wrong[5]—we hold that exigent circumstances justified the warrantless seizure and that the District Court did not err in denying Kunkler's motion to suppress on this ground.[6] *See United States v. Fulton,* 549 F.2d at 1327.

Accordingly, the judgment of conviction is

AFFIRMED.

---

even know in advance that [the occupant] was in the room.
600 F.2d at 1304. We added a footnote: "If exigent circumstances were created, they resulted from the agents' own conduct." *Id.* at n.2. *See United States v. Hackett,* 638 F.2d 1179, 1183–85 (9th Cir. 1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981); *United States v. Bustamante-Gamez,* 488 F.2d 4, 8–9 (9th Cir. 1973), *cert. denied,* 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974) (exigent circumstances justified warrantless intrusion; "[the officers] were not creating exigent circumstances. A different case would be presented if there were the possibility of abuse."); *Davis v. United States,* 327 F.2d 301, 306 (9th Cir. 1964).

4. *See Allard II,* 634 F.2d at 1187; *United States v. Picariello,* 568 F.2d 222, 226–27 n.2 (1st Cir. 1978). *Cf. Chambers v. Maroney,* 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970) (no constitutional difference between "seizing" and searching an automobile). *But see Arkansas v. Sanders,* 442 U.S. 753, 765–66 n.14, 99 S.Ct. 2586, 2593–94 n.14, 61 L.Ed.2d 235 (1979) (refusing to extend seizure-search analogy to personal luggage; "[w]e are not persuaded by the ... argument that ... if the police were entitled to seize the suitcase, then they were entitled to search it"). *See also United States v. Chadwick,* 433 U.S. 1, 13–14 n.8, 97 S.Ct. 2476, 2484–2485 n.8, 53 L.Ed.2d 538 (1977).

5. Kunkler's contention that exigent circumstances did not exist because "[t]he goods ultimately seized were not in the process of destruction" is belied by the fact that the cocaine discovered was laid out in "lines" on a table in Kunkler's house. A rolled-up $20 bill was nearby. Cocaine is commonly ingested by inhalation of such "lines" through rolled-up currency and similar hollow media.

6. Because we affirm the District Court based on our *de novo* review of the record, *see United States v. Bates,* 533 F.2d 466, 468 (9th Cir. 1976), we need not confront the issue whether the "clearly erroneous" standard of review is properly applicable to determinations of exigent circumstances. *Cf. United States v. Walther,* 652 F.2d 788, 791 (9th Cir. 1981) ("A district judge's findings of fact in a suppression hearing are subject to the 'clearly erroneous' standard.").