**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Victoria HICKS, Defendant-Appellant.**

**No. 83–5234.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 5, 1984.

Decided Jan. 21, 1985.

As Amended April 25, 1985.

---

Darrell W. MacIntyre, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Albert A. Newton, Santa Ana, Cal., for defendant-appellant.

Before FARRIS, and ALARCON, Circuit Judges, and PRICE,* District Judge.

ALARCON, Circuit Judge:

Victoria Helena Hicks (Hicks) seeks reversal of her conviction for conspiracy to distribute a controlled substance.

Hicks contends that the district court erred in denying her motion to suppress. She raises three issues on this appeal.

One. The entry of her dwelling house without a warrant, was not justified by exigent circumstances.

Two. The officers seized her residence without her consent prior to obtaining a search warrant.

Three. The evidence seized pursuant to the search warrant was tainted by the prior illegal entry.

I

EXIGENT CIRCUMSTANCES

A. *Factual Background*

Hicks and her daughter, Cristina Hicks (Cristina), resided at 7121 Rutgers Avenue, Westminster, California, during May of 1983.

On May 13, 1983, a reliable confidential informant to the FBI and the Drug Enforcement Administration (DEA) told D. Lynn Wood (Wood), a special agent of the DEA, that Cristina and Carlos Javier Marulanda (Marulanda) had advised him that they could supply kilogram quantities of cocaine from a "stash" house in San Francisco.

On May 14, 1983, Cristina and Marulanda told the informant that they were going to San Francisco to obtain some cocaine.

On May 15, 1983, Cristina rented a Dodge automobile bearing California license number 1GGG609 from a Hertz Rent-A-Car office in San Francisco. In renting the car, Cristina used her driver's license as identification. The driver's license showed that she resided at 7121 Rutgers, Westminster, California.

On May 16, Cristina told the informant that the cocaine was in Los Angeles. On the same date, Cristina and Marulanda met the informant in a motel in Stanton, California. There, the informant was shown a suitcase which contained five packages. One package was opened. It contained a white crystalline substance which appeared to be cocaine. Cristina told the informant that they had 11 kilograms of cocaine with them in the Los Angeles area. Cristina informed the informant he could contact her by telephone by dialing 714-895-2874. Telephone records show this number was subscribed to by Victoria Hicks of 7121 Rutgers, Westminster, California.

The informant observed Cristina and Marulanda in a vehicle with license number 1GGG609.

On May 18 and May 19, the informant told Wood that Cristina and Marulanda were going to deliver ten kilograms of cocaine to him on May 19, 1983, in the parking lot located at 16160 Huntington Beach Boulevard, Huntington Beach, California.

At 1:20 p.m., on May 19, 1983, FBI agents observed a Dodge automobile, bearing California license 1GGG609 in front of the residence at 7121 Rutgers, Westminster, California. At 5:45 p.m., a Volkswagen arrived at the residence. The Volkswagen was driven away at ten minutes to six. One of the FBI agents followed the Volkswagen but lost it in traffic.

* Honorable Edward Dean Price, United States District Judge for the Eastern District of California, sitting by designation.

At 6:10 p.m., Cristina drove away from her residence in a 1982 Toyota. Simultaneously, Marulanda drove off in the Dodge rented by Cristina.

Cristina and Marulanda arrived at the parking lot at 6:35 p.m. They showed Wood and the informant a suitcase containing ten bags of a substance which appeared to be cocaine. Marulanda stated that the cocaine in the suitcase was all he had. Cristina and Marulanda were arrested in the parking lot.

FBI Agent Robert Montoya (Montoya) and Special Agent John M. Valestra (Valestra) of the DEA observed the arrest of Cristina and Marulanda. Prior to May 19, 1983, Montoya had participated in approximately 250 narcotics-related investigations. Based on his experience in narcotics investigations and conversations with other investigators, he was aware that narcotics traffickers dealing in large quantities have confederates arrive at the site of a narcotics transaction to try to stop the transaction if law enforcement officers are in the area, or to tip off the source of supply, if the persons who make the delivery are arrested.

Prior to Cristina's arrest, Montoya and Valestra were advised, through a radio communication from other agents who were on surveillance duty at the Hicks residence, that a Volkswagen had left the area at approximately 5:45 p.m. The information concerning the Volkswagen caused Montoya to believe that there might be counter surveillance at the parking lot. Valestra's 13 years of experience in narcotics investigations caused him to believe that others were involved in the narcotics transaction in addition to Cristina and Marulanda.

Shortly after the arrest, the officers became aware that the Hicks residence was not under surveillance. Montoya and Valestra were directed to go to the Hicks residence ahead of the other units.

Earlier that day, Montoya attended a briefing session with other special agents from the DEA and the FBI. At that meeting, FBI Agent D. Brent Robbins (Robbins) informed Montoya and Valestra that Hicks and Marulanda had brought 11 kilos into the Los Angeles area. Because Montoya and Valestra had seen only ten kilos of cocaine in the trunk of Cristina's rented car, they believed that it was possible that additional quantities of cocaine were present in the Hicks residence. As Montoya and Valestra approached the Hicks residence, they observed Hicks and a small child walking hurriedly towards a vehicle. The officers pulled into the driveway, alighted from their vehicle and approached Hicks. Valestra testified that at this moment the situation was "stressful" because he did not know if someone was in the house pointing something at him. Because of the report of the Volkswagen, and the possibility of counter surveillance, Valestra also believed that someone might be in the house.

The officers told Hicks that they were federal agents and that her daughter had been arrested for selling ten kilos of cocaine.

Hicks advised the officers that her 15 year old son was alone in the house. Valestra knocked on the door and the window. The door was opened by George, Hicks' son. Valestra entered and quickly "took a fast-paced walk through the house beginning to [his] left looking in rooms for confederates or possible contraband that may have had a chance to be destroyed." Nothing was seized during this cursory search. Meanwhile, Hicks was escorted into the house by Montoya, after stating to him "Oh, my God, let's go inside the house. I don't want the neighbors to know what's going on."

After the protective sweep of the house for additional persons was completed, Hicks was told that a warrant was going to be obtained in order to search her residence. She was further advised that the agents could either stay inside with her, or wait outside until the warrant was obtained, "depending on what she wanted to do." Hicks advised the officers not to go outside because she did not want the neighbors to know what was happening. While

the officers waited for the warrant, she made coffee and served refreshments. The "atmosphere" in the Hicks residence was friendly and calm until the warrant was executed at 1:55 a.m.

During the search conducted pursuant to the warrant, a kilo of cocaine was discovered in Cristina's room, as well as other evidence that connected Hicks to illicit drug trafficking. Hicks was thereafter arrested, tried, and convicted of one count of conspiracy to distribute a controlled substance.

## II

### A. *Exigent Circumstances*

■ In reviewing a district court's determination that exigent circumstances justified the entry of a residence without a warrant, appellate judges must engage in a three step analysis. *United States v. McConney*, 728 F.2d 1195, 1200 (9th Cir. 1984) (en banc).

First. The trial judge's findings that certain facts occurred, the weight accorded to the evidence and the credibility of witnesses are reviewed under the deferential, clearly erroneous standard. *Id.* The clearly erroneous standard of review of the facts relieves appellate courts of "the burden of a full scale independent review and evaluation of the evidence." *Id.* at 1201.

■ Second. The selection by the trial court of the applicable law is reviewed de novo. *Id.* at 1201.

Third. The application of the law to the facts as established by the district court is subject to de novo review. *Id.* at 1202.

In *United States v. Salvador*, 740 F.2d 752 (9th Cir.1984), we set forth the test for the application of the exigent circumstances exception to the requirement of a search warrant for a lawful entry of a residence. There, under the de novo standard, we defined exigent circumstances as " 'those in which a substantial risk of harm to the persons involved or to the law enforcement process would arise if the police were to delay a search until a warrant could be obtained.' " *Id.* at 758, *quoting United States v. Robertson*, 606 F.2d 853, 859 (9th Cir.1979). *See also United States v. Kunkler*, 679 F.2d 187, 191–92 (9th Cir. 1982). We also noted in *McConney*, that "[w]hen police have properly knocked and announced their identity and purpose, mild exigency is sufficient to justify simultaneous entry when entry can be accomplished without physical destruction of property." 728 F.2d at 1206. "Mild exigency may exist where there is a likelihood that the occupants will try to escape, resist or destroy evidence." *Id.* at 1206.

■ The district court expressly found that the officers knocked and announced their presence. The door was opened by Hicks' son. No physical destruction of property occurred. Furthermore, Hicks requested that they continue their discussion inside the residence.

The district court relied on this court's opinion in *United States v. Kunkler*, 679 F.2d 187 (9th Cir.1982) in selecting the law applicable to the established facts. In *Kunkler*, we said exigent circumstances justify a warrantless entry, search, or seizure of the premises: "[w]hen police officers, acting on probable cause and in good faith, reasonably believe from the totality of the circumstances that ... evidence or contraband will imminently be destroyed ...." *Id.* at 191–192.

■ In applying the *Kunkler* test to the facts found by the district court, this court must be satisfied after a de novo review of the record that the totality of the circumstances established that there was probable cause to believe that there were persons within the Hicks residence who would destroy the remainder of the cocaine brought into the Los Angeles area from San Francisco.

■ In assessing the existence of probable cause to enter or to search a residence, this court has held that direct observation of contraband in a particular location is not

required. A court may also consider "the type of crime, nature of the items, and normal inferences where a criminal will likely hide contraband." *United States v. Dubrofsky*, 581 F.2d 208, 213 (9th Cir. 1978). In the instant matter, the officers who entered were aware not only that Cristina lived at the residence, but that she and Marulanda had left her residence just before they delivered ten packages containing ten kilograms of cocaine. They were also aware that a few days earlier, Cristina had stated she had a total of 11 kilograms. Since only ten kilograms were delivered, the officers could reasonably infer that the remaining kilogram was hidden in the Hicks residence.

■ Montoya and Valestra formed the belief that others might be present within the Hicks residence because the Volkswagen had left just before the time set for the delivery of ten kilos of cocaine. While to the untrained eye of an appellate judge, this conduct would appear meaningless, the established facts show that to an experienced narcotics agent, the fact that another vehicle drove away from the Hicks residence just prior to the delivery of the controlled substance, indicated that a counter surveillance was being conducted in order to warn persons at Cristina's home to destroy the remainder of the cocaine if an arrest took place. Conduct which appears innocent to a lay person may have an entirely different significance to an experienced narcotics officer. *United States v. Bernard*, 623 F.2d 551, 560 (9th Cir.1980). The significance of a counter surveillance automobile in the vicinity of a large scale narcotics transaction was not disputed by Hicks before the district court or on this appeal.

When the officers arrived at the Hicks residence, they saw Hicks leaving hurriedly. The officers could infer from her haste in leaving the residence that she had been made aware of the arrest of her daughter by the driver of the Volkswagen and that she was fleeing after attempting to destroy any evidence that cocaine was in the residence. When the officers were told that Hicks' son was in the house, it was quite proper for them to infer that destruction of the cocaine could still take place. The evidence supports the district court's finding that there was probable cause to believe that there was a fair probability that any cocaine in the Hicks residence would be destroyed in absence of swift action.

■ The totality of the circumstances satisfied the requirement exigent circumstances to justify a warrantless entry. The officers' knowledge of the behavior of narcotic peddlers who deal in large quantities, the information they received from a reliable informant, and their personal observations at the Hicks residence, justified their good faith belief that there was a likelihood that persons within the Hicks residence would destroy the remaining cocaine if they delayed their entry until a search warrant was obtained. Moreover, these circumstances satisfied the mild exigency requirements for a simultaneous entry where no physical destruction occurs. As we stated in *McConney*, "[a]lthough any one of these factors standing alone might be insufficient to create the mild exigency required, the combination of factors in this case satisfies the requirement of *Bustamante-Gomez*." 728 F.2d at 1206.

We are satisfied from our de novo application of the law to the facts as determined by the district court that exigent circumstances compelled the entry.

B. *Absence of Consent*

■ Victoria Hicks also contends that she did not voluntarily consent to the entry of her residence. Because the evidence is sufficient to show mild exigent circumstances justifying a warrantless entry, it was unnecessary for the government to prove that Victoria Hicks voluntarily consented to the cursory search for other suspects.

■ The record clearly indicates that the officers remained on the premises after a *lawful* entry at Hicks' request, after explaining to her that they would wait outside for the warrant if she wanted them to leave. The evidence shows that shortly after the initial protective sweep of the residence, the officers offered to wait outside until the warrant was obtained. Victoria Hicks asked them to remain inside. Thus, while it is true that the officers were within the Hicks residence for many hours until the warrant was executed, any alleged seizure of the *premises* occurred after a lawful entry.

### C. *The Warrant Was Untainted*

■ Finally, Hicks argues that the search warrant was tainted because her premises were illegally entered and seized. No other attack has been made on the validity of the warrant. As discussed above, the officers' entry was justified by exigent circumstances. Thus, issuance of the warrant was not tainted by unreasonable official conduct.

The judgment is AFFIRMED.