**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Samuel Clinton DRIVER and Panom
Driver, Defendants-Appellees.**

No. 83–1025.

United States Court of Appeals,
Ninth Circuit.

Argued Sept. 15, 1983.

Submitted Sept. 5, 1984.

Decided Nov. 13, 1985.

Joseph P. Russoniello, U.S. Atty., John Gibbons, Chief, Joseph M. Burton, Asst. U.S. Atty., and Sandy Teters, San Francisco, Cal., for plaintiff-appellant.

Marilyn Waller, Traun & Waller, Doren Weinberg, Larsen & Weinberg, San Francisco, Cal., Arthur M. Sochcot and Hazel Weiser, Mill Valley, Cal., for defendants-appellees.

Before CHOY and NORRIS, Circuit Judges, and HOFFMAN,* District Judge.

WALTER E. HOFFMAN, District Judge:

This case involved the original smuggling of heroin by Joe Dean Hensley as agent for Samuel Clinton Driver. Samuel Driver was charged with engaging in a continuing criminal enterprise pursuant to 21 U.S.C. § 848, and, along with Panom Driver (his wife), and David Hess, was charged in five counts with violations of possession with intent to distribute a controlled substance under 21 U.S.C. § 841(a)(1); importation of a controlled substance under 21 U.S.C. § 952(a); attempt and conspiracy to commit an action prohibited under the Drug Abuse Prevention Act; and, aiding and abetting under 18 U.S.C. § 2.

Both Drivers filed a motion to suppress evidence seized from Panom Drier's purse and the Driver warehouse. The government conceded that the Drivers had standing to challenge the searches and seizures.

The district court granted the motion to suppress. Prior to filing the findings of fact and conclusions of law, the government filed a motion for reconsideration which, after argument, was denied. The government has appealed the decision of the district court to suppress the evidence. Jurisdiction is noted as proper under 18 U.S.C. § 3731. We temporarily suspended our decision pending the disposition by the Supreme Court in *Segura v. United States,* —— U.S. ——, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). The defendants are currently free on bond. We now affirm that portion of the district court opinion suppressing evidence obtained from Panom Driver's purse, and reverse and remand the determination of the district court that the evidence found pursuant to the search warrant was tainted by the prior seizure.

I.

On January 19, 1981, at about 10:45 a.m., Joe Dean Hensley was arrested at the San Francisco International Airport after United States Customs inspectors found heroin concealed in the false bottoms of two aerosol spray cans he was carrying.

Questioned by Drug Enforcement Agency (DEA) Special Agent Fiorentino, Hensley stated that he had gone to Thailand with Samuel Driver in order to smuggle heroin back into the United States. Hensley was to deliver the heroin hidden in the spray cans to Driver's wife, Panom Driver, at the Driver furniture warehouse in San Rafael, California. Samuel Driver remained in Thailand. Hensley was to receive one-half of the contents of one can.

---

* The Honorable Walter E. Hoffman, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Agreeing to cooperate with DEA agents, Hensley proceeded with the prearranged delivery to Driver's wife. The agents replaced all but a small portion of the heroin with a look-alike substance. At about 4:12 p.m., Hensley arrived at the warehouse wearing a radio transmitter; he was under observation by DEA agents. Hensley delivered the cans to Mrs. Driver. They were overheard opening the cans and discussing the quality of the heroin and the fact that a certain quantity was due Hensley. While there, Hensley telephoned Samuel Driver and confirmed that delivery had been made. Mrs. Driver also spoke on the telephone and told her husband she would phone him later. Subsequent conversation between Hensley and Panom Driver was about the quality of the shipment and Mrs. Driver expressed that the heroin appeared different from previous shipments.

At about 5:00 p.m., Hensley left the warehouse and met with the DEA agents awaiting outside. Without a search warrant or an arrest warrant, the agents entered the warehouse using Hensley's key to the outside door, climbed a flight of stairs to the office area, and according to the finding by the district court, opened a closed door to a private office without knocking or obtaining consent.[1] Mrs. Driver was arrested. Also in the office area were four children, two of whom belonged to Mrs. Driver.

Mrs. Driver's purse was searched and according to a declaration by a DEA agent, a bag of white powder was found therein "right after her arrest." The agents conducted a "plain view" search of the entire warehouse. The substance delivered by Hensley was not then located. The agents thereupon decided that a search warrant was necessary and everyone left the warehouse around 5:30 p.m., with two agents remaining outside to secure the building. The two agents were instructed not to allow anyone to enter the premises.

At 9:30 p.m., a search warrant having been obtained, a search was conducted and revealed the evidence which was excluded by the district court's suppression action. The government filed a timely notice of appeal.

## II.

A warrantless arrest of an individual in a "public place" does not violate the Fourth Amendment. *United States v. Santana*, 427 U.S. 38, 42, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300 (1976); *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). However, an individual's privacy interests may be implicated in a variety of other settings, none of which are more clearly defined than the physical dimensions of one's home. *Payton v. New York*, 445 U.S. 573, 589, 100 S.Ct. 1371, 1381, 63 L.Ed.2d 639 (1980). It is unquestioned that a warrantless and non-consensual entry into a suspect's home to make a routine felony arrest is prohibited. *Id.* at 576, 100 S.Ct. at 1374.

It is nonetheless clear that business premises are protected by the Fourth Amendment. *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977); *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967); *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). The Court has recognized that a business, by its special nature and voluntary existence, may open itself to intrusions that would not be permissible in a purely private context. *G.M. Leasing Corp.*, 429 U.S. at 353, 97 S.Ct. at 628–29. The relevant question in the context of an entry into the home or business is the individual's expectation of privacy. For "what a person knowingly exposes to the public, even in his own house or office, is not a subject of Fourth Amendment protec-

---

**1.** The district court stated in its findings of fact that the business premises were separated into three areas; a furniture showroom open to the public on the floor level; a downstairs area constituting the warehouse; and, an upstairs level where the office was located. The warehouse and office areas were locked and Samuel and Panom Driver were the only ones with keys to the office area.

tion." *Katz v. United States,* 389 U.S. at 351, 88 S.Ct. at 511.

In the present case, the district court found that Panom Driver was arrested in a closed office area constituting personal quarters of both Samuel and Panom Driver. This finding implies Mrs. Driver was not in an area exposed or visible to the public, but in an area of the warehouse with a reasonable expectation of privacy. This is not a case where the arrest was based on the nature of the business, a license, or any regulation of the business activities. Thus, the Court is of the opinion that this intrusion involved nothing more than a warrantless routine felony arrest.

An exception to the warrant requirement of the Fourth Amendment is the presence of exigent circumstances. *United States v. Salvador,* 740 F.2d 752, 758 (9th Cir.), cert. denied, — U.S. —, 105 S.Ct. 1978, 83 L.Ed.2d 980 (1984); *United States v. McConney,* 728 F.2d 1195 (9th Cir.) (en banc), cert. denied, — U.S. —, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984); *United States v. Kunkler,* 679 F.2d 187 (9th Cir.1982). We have defined exigent circumstances as justifying a warrantless entry:

> When police officers, acting on probable cause and in good faith reasonably believe from the totality of circumstances that (a) evidence or contraband will imminently be destroyed or (b) the nature of the crime or character of the suspect(s) pose a risk of danger to the arresting officers or third persons.

*United States v. Kunkler,* 679 F.2d at 191–192.

The district court unequivocally stated in its findings, "there was no showing of exigent circumstances to justify the arrest of Panom Driver and the subsequent search without a warrant." The government contends that the district court did not find a lack of exigent circumstances, but that any attendant circumstances were precipitated by the agents' own actions, thereby rendering unavailable this exception to the warrant requirement. Therefore, this Court will examine the basis for the district court's determination that exigent circum-

stances were not present. We review the issue of exigency *de novo. United States v. Salvador,* 740 F.2d at 758; *United States v. McConney,* 728 F.2d at 1199.

■ Since a warrantless arrest is "presumptively unreasonable," *Payton v. New York,* 445 U.S. at 586, 100 S.Ct. at 1380, we have recognized that the government bears a heavy burden of demonstrating that exceptional circumstances justified a departure from the normal procedure of obtaining a warrant. *United States v. Spetz,* 721 F.2d 1457, 1465 (9th Cir.1983). Because of the intrusive nature of a warrantless arrest, the government must demonstrate specific and articulable facts to justify the finding of exigent circumstances, and this burden is not satisfied by leading a court to speculate about what may or might have been the circumstances. *See Arkansas v. Sanders,* 442 U.S. 753, 759–60, 99 S.Ct. 2586, 2590–91, 61 L.Ed.2d 235 (1979).

The government contends that the initial entry and arrest was made without a warrant because the agents were afraid that Panom Driver would destroy the evidence. Once inside, the agents searched the entire warehouse to assure that no hidden persons posed a danger to the agents. Both of these concerns are recognized as legitimately amounting to exigent circumstances. *United States v. Johnson,* 660 F.2d 749, 752 (9th Cir.1981), cert. denied, 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982); *United States v. Gardner,* 627 F.2d 906, 910–912 (9th Cir.1980). However this Court has also held that if the exigent circumstances resulted from the agent's own improper conduct, these circumstances cannot be relied upon as an excuse. *See United States v. Allard,* 600 F.2d 1301, 1304 n. 2 (9th Cir.1979); *United States v. Kunkler,* 679 F.2d at 191–192 n. 2. The agents in this case would not have had to fear for their safety if they had not first entered the warehouse. Thus, the agents' search of the warehouse can only be excused if their initial entry was justified by exigent circumstances.

When establishing exigent circumstances, it is not sufficient to merely state that the evidence is on the premises. *United States v. Allard,* 600 F.2d at 1034. There must be some proof that shows the removal or destruction of the evidence is imminent. *United States v. Kunkler,* 679 F.2d at 191. In support of fear that Panom Driver would destroy the adulterated heroin unless they entered immediately, Agent Fiorentino asserts only the fact that Mrs. Driver voiced concern about the quality of the heroin, told her husband about it, and told him she would call him later. The government submits it was reasonable at that time to assume that Mrs. Driver would be able to test the substance, discover it was not heroin, and either destroy the evidence or flee. Although this Court has held that fear of discovery may itself be an exigent circumstance, in that case we held there was a substantial likelihood that discovery had already occurred or was about to occur. *See United States v. Busta-mante-Gamez,* 488 F.2d 4, 8–9 (9th Cir. 1973), *cert. denied,* 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974); *See also United States v. Curran,* 498 F.2d 30, 35–36 (9th Cir.1974).

On the basis of the evidence submitted, this Court is not convinced that the warrantless entry was justified by the attendant circumstances. The DEA agents' assumptions may have been subjectively reasonable regarding the later discovery by Mrs. Driver of the adulterated heroin. Yet, the assumptions are indeed, too speculative as to the likelihood or imminence of the discovery, and not substantial enough to justify the warrantless entry. The government has not met its burden of demonstrating exigent circumstances to support a departure from the normal procedure of obtaining a warrant. We therefore, agree with that portion of the district court opinion finding a lack of exigent circumstances, and that the initial warrantless entry, and security search was illegal.

**2.** We review *de novo* the question whether a seizure occurred. *LaDuke v. Nelson,* 762 F.2d

### III.

The district court further concluded that the subsequent securing of the warehouse in anticipation of a search warrant constituted a "seizure" of the entire premises and its contents, thereby invalidating the resulting warrant and search conducted pursuant thereto.[2] That conclusion was based on the seminal case of *United States v. Allard,* 634 F.2d 1182 (9th Cir.1980) (Allard II), where we held that where police officers remain upon the premises until the issuance of a search warrant, their conduct, along with the illegal entry and search, constitutes a "seizure" of the premises, which "automatically taints" any subsequently seized evidence notwithstanding any "independent source" supporting the warrant.

However, since the district court ruled upon this case, we decided that our holding in *Allard II,* had been effectively overruled by the Supreme Court in *Segura v. United States,* —— U.S. ——, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). *See United States v. Lancellotti,* 761 F.2d 1363 (9th Cir.1985); *United States v. Moreno,* 758 F.2d 425 (9th Cir.1985). For the same reasons we discussed in *Lancellotti,* and *Moreno,* the "automatic taint" rule is no longer authoritative in considering the case before the Court.

We now must determine whether there is an independent source for the discovery of the later evidence seized, unrelated to the initial illegal entry and search pursuant thereto. *Lancellotti,* 761 F.2d at 1365–1367; *Moreno,* 758 F.2d at 426. In other words, if as in the present case, the heroin was obtained pursuant to information that was sufficiently distinguishable from the illegal entry and search, the evidence need not be suppressed.

In viewing the information submitted for obtaining a search warrant, we do so in a "common sense and realistic fashion." *United States v. Ventresca,* 380 U.S. 102, 108–109, 85 S.Ct. 741, 745–6, 13

1318, 1327 (9th Cir.1985); *see also McConney,* 728 F.2d at 1203.

L.Ed.2d 684 (1965); *United States v. Kunkler,* 679 F.2d at 190. We need only determine that the search warrant was issued upon probable cause as supported by facts "untainted" by the prior illegality. *United States v. Giordano,* 416 U.S. 505, 554–56, 94 S.Ct. 1820, 1845–46, 40 L.Ed.2d 341 (1974) (Powell, J., concurring in part and dissenting in part).

The warrant may be upheld even where it contains tainted and untainted facts as long as the untainted portions contain a sufficient showing of probable cause to render the warrant valid. *Id.* The district court, however, never made an inquiry as to whether the search warrant was based upon independent evidence. The district court, adhering to *Allard II,* ruled that the entry was illegal, therefore the securing was illegal, and thus, the search warrant was automatically tainted—a situation we have determined to be no longer controlling.

While in the present case, there appears to be sufficient independent evidence to have prompted the issuance of a search warrant despite some reference to the illegal entry, this is essentially the duty of the district court to make the appropriate finding.[3] We therefore vacate and remand to the district court to inquire into the basis for the search warrant.

**VACATED and REMANDED.**

---

**3.** The addendum to the affidavit was executed by Agent Fiorentino, a Special Agent for Drug Enforcement Administration. After reciting pertinent facts about Hensley's arrival at the airport; the discovery of heroin in the two aerosal cans with false bottoms; Hensley's arrest and his subsequent disclosure of the facts involving Samuel Clinton Driver and Panom Driver; the contemplated delivery of the heroin to Mrs. Driver at the warehouse in San Rafael; Hensley's agreement to cooperate and attempt a delivery to Mrs. Driver; the substitution of a heroin-like powder excepting a small portion of heroin; the telephone call from Hensley to Mrs. Driver; the providing of a radio transmitter to Hensley prior to his entry into the warehouse and his admission therein without using his key; the substance of the conversation between Hensley and Mrs. Driver; the telephone conversations between Hensley and Mrs. Driver when

they called Sam Driver in Bangkok; paragraph 13 of the affidavit then recites the following:

"13, At approximately 5:00 p.m., your affiant and other Drug Enforcement Administration Agents and local law enforcement officers entered the warehouse at 1945 Francisco Blvd., Unit N, with Hensley's key, and your affiant contacted Panom Driver and placed her under arrest for conspiring to import heroin. A walk through Unit L, M, N & C, which are all part of the warehouse complex housing Driver's business, was made and the two aerosol cans were not observed in plain view. Panom Driver was advised of her rights by your affiant, however, she advised that she did not know what I was talking about when I asked her for the aerosol can containing heroin. The warehouse was secured from the outside pending the application of the warrant."