UNITED STATES of America,
Plaintiff-Appellee,

v.

Constanza PERDOMO,
Defendant-Appellant.

No. 84–1357.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 10, 1986.

Decided Sept. 25, 1986.

Sanford Svetcov, Chief, Martin Healey, Asst. U.S. Attys., San Francisco, Cal., for plaintiff-appellee.

Stephen J. Heiser, San Francisco, Cal., for defendant-appellant.

Before CHAMBERS, Senior Circuit Judge, SNEED and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Defendant Constanza Perdomo appeals her conviction by a jury of two counts of possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), and one count of conspiracy to distribute cocaine, 21 U.S.C. § 846. Perdomo was sentenced to concurrent fifteen-year prison terms on each count and a five-year special parole term on the counts dealing with possession with

intent to distribute.[1] Appeal was timely, 28 U.S.C. § 1291, and we affirm.

## I

In May, 1984, Robert Shelton, an undercover informant for the DEA, began negotiations to purchase a large amount of cocaine from Robert Agness. In July, Special Agent Thomas Feeney became involved in the undercover operation posing as the man supplying Shelton with money for the cocaine purchase. The final agreement provided that Agness would sell Feeney and Shelton two kilograms of cocaine for $90,000 on July 6.

Agness and Shelton had several telephone conversations about the transaction on the morning of July 6. At approximately 10:10 that morning, Manuel Santos arrived at Agness' home in Danville, California. Santos met with Agness for approximately 45 minutes. While Santos was at the house, Agness spoke with Shelton and told him that his source of supply was with him at the Danville residence. The cocaine was to be delivered later that day.

DEA agents and local law enforcement officials followed Santos after he left the meeting with Agness. Santos drove to a house in Newark, California, where he stayed until about 3:00 p.m. He left the Newark house at that time and drove to the defendant's house at 2976 Sombrero Circle, San Ramon, California.

When Santos arrived at the defendant's house he parked in front of the house for approximately one minute without getting out of the car. A yellow Ford Fairmont, apparently driven by Perdomo, then pulled into the garage at the house. After two to four minutes Santos came out of the house carrying a red paper bag with reddish coloring.

Santos got back into his car with the package and drove to Agness' home. All surveillance units followed him from 2967 Sombrero Circle. Santos entered the house where he met with Agness and Shelton.

Agness asked Santos whether they could continue doing business, and Santos replied that they could "as long as she is happy with this," and that there was no problem with "her doing more."

After the meeting concluded, Santos left the house and returned to his car. He reached into the rear of the vehicle and removed the paper bag he had carried from defendant's house. Santos carried the bag to a red Porsche owned by Agness and left the bag behind the driver's seat. Shortly thereafter Agness delivered the bag to Special Agent Feeney. The package contained two kilograms of cocaine with 87% purity.

Agness and Santos were taken into custody. The agents then returned to Perdomo's residence. The officers knocked and announced their purpose and, after hearing voices inside but getting no response, the officers forced entry into the house.

The officers performed a brief security sweep of the premises, arrested Constanza Perdomo, and secured the house while a federal search warrant was obtained. Between six and seven hours elapsed before the warrant arrived. The house was searched pursuant to the search warrant and the officers recovered a kilogram of 85% pure cocaine in the garage, a smaller quantity of 80% purity, and an Ohaus scale.

Perdomo moved to suppress evidence at trial relating to the observations the officers made after entering the residence but before the arrival of the warrant. Perdomo also sought to suppress all evidence seized pursuant to the warrant on the ground that the warrant was overbroad in both scope and execution. The district court denied the motions.

During the trial, Perdomo requested that she be given a hearing under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), based upon her allegations that the affidavit supporting the search warrant contained statements that the affiants knew were false. The district

court also denied the request for a *Franks* hearing.

## II

Perdomo asserts that the district court erred in admitting testimony concerning the observations of police officers made after entry into the residence but before the arrival of the warrant. Those observations included: (1) that Perdomo was in the house at the time of the officers' entry and (2) that no other adults were present in the residence at the time of the police's entry.[2] Because we find the officers' entry justified by the exigent circumstances doctrine, we hold that the district court committed no error in admitting the officers' observations.

The securing of a residence by the police constitutes a "seizure" under the fourth amendment. *United States v. Chadwick*, 433 U.S. 1, 8, 97 S.Ct. 2476, 2481, 53 L.Ed.2d 538 (1977). Such warrantless seizures are per se unreasonable unless they fall within certain established and well-defined exceptions to the warrant clause. *Warden v. Hayden*, 387 U.S. 294, 298–300, 87 S.Ct. 1642, 1645–46, 18 L.Ed.2d 782 (1967); *McDonald v. United States*, 335 U.S. 451, 454–56, 69 S.Ct. 191, 192–94, 93 L.Ed. 153 (1948). One such exception is the exigent circumstances doctrine. *McDonald*, 335 U.S. at 455, 69 S.Ct. at 193.

> When police officers, acting on probable cause and in good faith, reasonably believe from the totality of circumstances that (a) evidence or contraband will imminently be destroyed or (b) the nature of the crime or character of the suspect(s) pose a risk of danger to the arresting officers or third persons, exigent circumstances justify a warrantless entry, search or seizure of the premises.

*United States v. Kunkler*, 679 F.2d 187, 191–92 (9th Cir.1982) (footnotes omitted). *Accord United States v. Hicks*, 752 F.2d 379, 383–84 (9th Cir.1985). The observa-

---

**2.** The officers also observed that Perdomo was dressed like the driver of the car that apparently arrived carrying cocaine for Santos. At trial, however, Perdomo stipulated that she was the driver of the car.

tions of the officers in this case from the time of their entry to the time of the warrant's arrival would be the product of an unlawful search and could not be admitted into evidence unless the elements required for a showing of exigent circumstances are present.

■ Our standard of review for the district court's finding of exigent circumstances [3] is governed by our prior decision in *United States v. McConney,* 728 F.2d 1195 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). The trial court's findings as to the underlying facts and the credibility of witnesses are reviewed under the clearly erroneous standard. *Id.* at 1200. The selection of the applicable law and the application of that law to the facts is reviewed de novo. *Id.* at 1201.

■ Our review of the record demonstrates ample evidence to justify the district court's finding of exigent circumstances. First, Santos identified Perdomo as his source of supply. Second, Agent Feeney's affidavit details the meticulous care with

which Perdomo, Santos, and Agness carried out their drug operations. Feeney's experience in investigating drug transactions led him to a reasonable conclusion that Santos ordinarily would return to Perdomo, his source of supply, with money after the transaction had been completed. After Santos was arrested, he no longer could return with the payment, and the agents reasonably believed that Perdomo would be alerted that the deal had gone awry by Santos' failure to return.

Without delay, the police returned to the Perdomo residence.[4] They knocked on the door and announced their presence. Voices came from within the residence; yet, no one answered the door. Because the police knew that cocaine was the controlled substance involved in the transaction and that it could be easily and quickly destroyed, the officers held a reasonable belief that a warrantless entry was justified by exigent circumstances.[5] *Kunkler,* 679 F.2d at 191–192.

We believe this case is just the kind of case which the exigent circumstances doc-

---

3. We believe that a fair reading of the record below indicates that the district court found exigent circumstances justifying entry:

   THE COURT: THE GOVERNMENT HAS INDICATED EXIGENT CIRCUMSTANCES FOR THE ENTRY.
   MR. HEISER: WE CONTEST THAT. THE AGENTS' CONCLUSION THAT THE DELAY WITHOUT ANY FACTUAL BASIS WHATSOEVER IS—
   THE COURT: IT'S A PRETTY SUBSTANTIAL FACTUAL BASIS. THEY KNEW PERFECTLY WELL IT WAS GOING TO HAPPEN.
   MR. HEISER: I KNOW THAT. THAT'S WHY THEY DELAYED IT.
   THE COURT: THEY DIDN'T DELAY THE ENTRY. THEY MADE THE ENTRY.
   MR. HEISER: THEY TOOK THE MAN BACK TO STATION (SIC) AND HELD HIM LONG ENOUGH SO THEY COULD HAVE AN EXCUSE TO GO INTO THE HOUSE WITHOUT A WARRANT. AND ITS NOT BEEN REFUTED. THE DELAY, IF ANY, WAS CAUSED BY THEM.
   MR. HEALEY: YOUR HONOR, COUNSEL IS TALKING ABOUT POSSIBLY A 15 MINUTE DELAY WHEN THE BRUNT OF THE DELAY HERE WAS BETWEEN 6:30 AND 1:00 O'CLOCK WHEN THE WARRANT WAS OBTAINED. THAT'S THE DELAY THAT I THINK IS IMPORTANT.

   THE COURT: WELL, BALANCING OUT THE EVIDENCE, REVIEWING THE EVIDENCE THAT I DEEM TO BE CREDIBLE, I FIND THERE IS NO VIOLATION OF THE NO-KNOCK REQUIREMENTS. THERE IS NO CREDIBLE EVIDENCE OF ANY IMPROPER SEARCHING OF THE HOUSE PRIOR TO THE TIME THE WARRANT ARRIVED THERE.

   Additionally, the fact that six to seven hours were needed to obtain the warrant does not make the seizure of the residence "unreasonable." *See Segura v. United States,* 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984) (19-hour delay).

4. The fact that the police did not delay their return indicates that their entry was based upon a good faith belief that exigent circumstances existed. "Good faith means not acting with the intent improperly to circumvent the warrant requirement by purposefully precipitating a situation, 'through illegal conduct,' in which the destruction of evidence or contraband is likely." *Kunkler,* 679 F.2d at 191 n. 3.

5. The district court found the officers' testimony to be credible, and our review of the record indicates that this finding is not clearly erroneous.

trine is intended to cover. The fourth amendment proscribes searches and seizures only when they are "unreasonable." The warrant clause, as interpreted by the Supreme Court, provides that searches and seizures are per se unreasonable in most cases in which the police have the opportunity to seek a warrant from a neutral and detached magistrate. However, the warrant clause is not intended to prevent the police from apprehending criminals capable of destroying inculpating evidence before a proper warrant can be sought. In such cases, warrantless searches are reasonable, and any other rule would place a truly unreasonable burden upon law enforcement. When, as here, it is apparent to the police that illegal narcotics and vital evidence might be lost due to a simple flush of a toilet, exigent circumstances exist justifying a warrantless entry.

### III

■ The search warrant at issue here identified the following items as proper objects for the search: "Cocaine, documents/paper items which identify the owners of the above-mentioned dwelling, other controlled substances, records of narcotics' transactions, narcotics' paraphernalia, documentation showing ownership of the above items, *and other records pertaining to the seizure in the residence.*" Perdomo asserts that the last clause of the warrant is unconstitutionally overbroad and that, as a result, the entire warrant is invalid. The question of whether a warrant is constitutionally overbroad is a question of law which we review de novo. *McConney,* 728 F.2d at 1200–01.

■ Defendant's argument concerning overbreath in the language of the warrant can be quickly dispatched. The case is governed expressly by *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976).

That case holds that general language located at the end of a warrant is to be viewed as relating only to the specific offense named in preceding portions of the warrant. The general language in this case, therefore, authorizes the search only for other documents that may be related to cocaine trafficking. So construed, the warrant is not unconstitutionally vague. *Andresen,* 427 U.S. at 481–82, 96 S.Ct. at 2749. *Accord United States v. Cardwell,* 680 F.2d 75, 77–78 (9th Cir.1982).

■ Perdomo also challenges the scope of the search warrant as executed. The record does not reveal, however, that the agents engaged in a general exploratory search nor does it disclose that they withheld from the magistrate the true nature of the search. *United States v. Rettig,* 589 F.2d 418, 422–23 (9th Cir.1978). The only documents seized that did not relate to drug trafficking were certain religious documents. None of these documents were admitted into evidence. The district court, therefore, committed no error in admitting into evidence items seized pursuant to the warrant.

### IV

■ Finally, Perdomo asserts that the district court erred in not granting her a hearing under *Franks v. Delaware.* We review the district court's denial of a *Franks* hearing de novo. *United States v. Dicesare,* 765 F.2d 890, 895 (9th Cir.1985).

We have held that there are five requirements that must be satisfied before a defendant is entitled to a hearing under *Franks*:

(1) the defendant must allege specifically which portions of the warrant affidavit are claimed to be false; (2) the defendant must contend that the false statements or omissions were deliberately or recklessly made; (3) a detailed offer of proof, including affidavits, must accompany the allegations; (4) the veracity of only the affiant must be challenged; (5) the challenged statements must be necessary to find probable cause.

*Dicesare,* 765 F.2d at 894–95.

Perdomo points to three statements in the affidavit that are allegedly falsified. First, she contends that a statement in the affidavit supporting the warrant to the ef-

fect that an informant overheard a conversation between Agness and Santos was false. The affidavit states that during this conversation Agness asked Santos about additional deliveries of cocaine and that Santos replied he had nine kilos left. Perdomo asserts that this conversation never took place, and therefore the statement supporting the warrant is false.

Perdomo's challenge to the warrant on this ground must fail because, even if Perdomo's statements are believed, they reflect only on the veracity of the informant who claims he overheard the conversation, not the veracity of the affiant. Allegations that statements reported in the affidavit and made to the affiant are false are not sufficient to satisfy the requirements for a *Franks* hearing unless the defendant contends that the affiant has misrepresented the statements made by another. *Id.*

Second, Perdomo states that the officer could not have known that the garage was attached by a door to the family room of Perdomo's residence, and therefore the officers must have invented this fact for purpose of obtaining a warrant. Perdomo bases this assertion on her claim that the door connecting the garage to the family room of the house as stated in the warrant cannot be observed from the front of the house where the officers were standing. Initially, we note that even if Perdomo were correct that the officers could not observe the doorway from the street in front of her house, her claim under *Franks* fails because the fact was not necessary to a finding of probable cause. Even if the garage connected to another room of the house or to no room at all, the affidavit stated that Santos entered Perdomo's garage empty handed and left carrying a bag containing cocaine. These facts alone gave rise to probable cause under the totality of the circumstances. *See Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Because the statement was not necessary to a finding of probable cause, the fifth requirement for a *Franks* hearing was not met. *Dicesare,* 765 F.2d

at 895. Further, Perdomo's offer of proof on this point is insufficient to satisfy the requirements for a hearing. Nothing Perdomo offers by way of proof on this point indicates that the police necessarily misstated facts in the affidavit. The officers may have concluded that the garage connected to the family room by examining the exterior structure of the house. Perdomo's allegations that the door could not be seen from the front of the house does not preclude the possibility that the officers could have obtained the same information through different means.

Finally, Perdomo states that officers could not have seen the bag carried by Santos from the house as stated in the warrant. The record reveals, however, that Santos had parked his car on the street. Santos must have come into view carrying the bag with red markings for at least a brief period of time after leaving the home. Thus, Perdomo's offer of proof does not indicate that the statements contained in the affidavit are false.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

