5 F.3d 544
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee
v.
Steven Mark WHITE, Defendant-Appellant.
 No. 92-30106.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 7, 1993.*
Decided Aug. 19, 1993.
 
 1
 Appeal from the United States District Court for the District of Oregon; No. CR-91-60141-1, Michael R. Hogan, District Judge, Presiding.
 
 
 2
 D.Or.
 
 
 3
 AFFIRMED.
 
 
 4
 Before PREGERSON and KLEINFELD, Circuit Judges, and INGRAM,** Senior District Judge.
 
 
 5
 MEMORANDUM***
 
 
 6
 Steven Mark White appeals from the denial of his motion to suppress evidence and from the two level enhancement of his sentence for possession of a firearm. We affirm.
 
 
 7
 Following his indictment on a single count of manufacturing marijuana under 21 U.S.C. Sec. 841, White filed a motion to suppress the evidence found in a search of his home, alleging that the affidavit offered in support of the search warrant contained material misstatements and falsehoods known to the affiant law enforcement officer. The district court denied White's request for a hearing under Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), and denied the motion to suppress. Thereafter, White entered a plea of guilty conditional upon a preservation of his right to appeal the denial of the motion to suppress.
 
 
 8
 At sentencing, the district court found the base offense level to be 32 and then found that White possessed a firearm during the commission of the offense within the meaning of U.S. Sentencing Guideline (U.S.S.G.) 2D1.1(b)(1). The court therefore enhanced his sentence by two levels.
 
 
 9
 The issues on appeal are: 1) did the district court properly refuse White's request for a Franks hearing and denying his motion to suppress?; and 2) did the district court properly enhance White's sentence level? We conclude, as set forth below, that the district court acted properly, and we affirm.
 
 FACTS
 
 10
 During August 1990, Detective Dewey Patten of the Jackson County Sheriff's Office obtained information from two confidential informants that White was growing marijuana at his home in a remote, rural area of Jackson County. The informants claimed that White's children had told them that their father had an indoor marijuana grow and that he had dug a large hole for a generator. One of the informants also claimed to have purchased marijuana from White and stated that orange and black metal fuel barrels had been observed in the back of White's pick-up truck numerous times.
 
 
 11
 The other informant stated that he/she had observed an indoor marijuana grow in the garage of a house in which White had previously lived with his wife. The informant stated that White "was always bragging about growing marijuana" and said that he had been growing marijuana since he was 17 years old. This informant claimed to have once seen "about three pounds of marijuana" in the White's house while White still lived there.
 
 
 12
 On several occasions during the fall of 1990 Det. Patten and Det. Roy Skinner observed White's property from an adjoining vacant lot. There was a mobile home and a large metal barn-like shop building located on the property. The shop building had one window which appeared to be covered with a heavy cloth.
 
 
 13
 In January 1991, an officer with the Eugene Police Department reported that he had observed a man pull a pick-up truck bearing license plates registered to White into the parking lot of an indoor gardening business in Eugene known as "Rain or Shine," a business known to be the source of supplies for numerous marijuana growing operations. The driver left the store with several boxes and one light ballast. As the driver exited the lot he appeared to be "attempting to determine if he was being followed." He drove into and out of parking lots and "constantly turned his head."
 
 
 14
 In March 1991, Dets. Patten and Skinner returned to the lot adjoining White's property. The detectives heard the muffled sound of an engine coming from the vicinity of the mobile home and shop building on White's property. The detectives could not see any engine but concluded, on the basis of the informant's statement that White had dug a hole for a generator and from the muffled nature of the sound, that there was an underground generator near the shop building. Returning to the property after dark, the detectives observed small light leaks coming from the shop building. They could hear the generator running and smell diesel fumes. On subsequent daylight and nighttime visits to the property the detectives were sometimes able to hear the generator and sometimes were not.
 
 
 15
 In April 1991, the detectives returned to the vacant lot with a "Thermal Imaging Device" which indicates heat contrast between objects by varying degrees of brightness. Using this device Det. Patten observed that the shop was much brighter (i.e., warmer) than the house and that the roof of the shop was much warmer than its walls. Det. Patten knew that the lights required in indoor marijuana grows create a great amount of heat.
 
 
 16
 Based on the foregoing information a search warrant was issued. Upon the execution of the warrant agents discovered a marijuana growing operation consisting of approximately 2400 plants. Agents also seized various items of growing equipment including grow lights and light ballasts. The pick-up was backed up to a shed containing a generator and in the back was a diesel fuel barrel and an electric fuel pump. The agents found a .20 gauge shotgun with a pistol grip inside the pick-up's cab.
 
 DISCUSSION
 
 17
 A. Did The District Court Properly Deny Defendant's Request For A Franks Hearing And Motion To Suppress?
 
 
 18
 White moved to suppress the results of the search on the ground that the affidavit offered in support of the warrant application was defective. He alleged that Det. Patten deliberately misstated things in order to make them sound incriminating and that Det. Patten was aware of information tending to cast doubt on the credibility of the informants which he failed to include in his affidavit. The district court found these allegations insufficient to require a full hearing under Franks v. Delaware, supra, and denied the motion to suppress.
 
 
 19
 We review this decision de novo. United States v. Perdomo, 800 F.2d 916, 920 (9th Cir.1986). Franks holds:
 
 
 20
 [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to a finding of probable cause, the Fourth Amendment requires a hearing be held at the defendant's request.
 
 
 21
 Franks v. Delaware, supra, 438 U.S. at 155-56, 98 S.Ct. at 2676-77, 57 L.Ed.2d at 672. White alleges three knowingly false or misleading statements in the warrant affidavit.
 
 
 22
 First, it is alleged that Det. Patten's statements that he was able to hear the sound of an engine running and could smell diesel fumes from where he stood on the adjacent lot were fabricated. In support of this allegation the defense presented evidence that the narcotics agents took a videotape of the search, beginning by recording the view of White's residence from Det. Patten's observational vantage point on the adjoining property. The camera was then walked around the property, into the shop building and around back where the generator was found. Although the generator was running during the taping no noise that could be attributed to the generator can be heard on the audio portion of the tape until the camera was taken to the back of the building. This, the defense claims, proves that it was impossible for the detectives to have heard the generator from their position on the neighboring lot.
 
 
 23
 In addition, the defense investigator spoke to several neighbors who allegedly walked regularly within 100 feet of the generator or stood just outside the shop and talked to White and who never heard the generator or smelled any fumes.
 
 
 24
 We agree with the government that this showing is insufficient to require a Franks hearing. There is no evidence that any of the neighbors made their observations at the same time the detectives made theirs. Nor is there evidence of what competing background noise existed during the neighbors' observations or that the generator was in fact running during the times that the neighbors were near the property. The mere fact that neighbors never heard a generator running or smelled any fumes does not make it impossible for the detectives to have heard and smelled the generator at other times. Det. Patten stated that the sound of the generator was muffled and on one occasion was so quiet that it could not be heard if frogs were croaking or cars passing on the road. The detectives were no doubt listening intently and thus were more likely to discern the generator noise than unsuspecting neighbors stopping to chat.
 
 
 25
 Likewise, there is no showing regarding the audio capacities of the video camera nor of the nature of any background noise during the search. The fact that the video did not pick up the generator noise at this particular time does not make it impossible for the detectives to have heard the generator on a quiet day while listening very carefully. We do not believe defendant's showing is substantial enough to have required a Franks hearing.
 
 
 26
 White next alleges that the description of the thermal imaging results were deliberately misleading. He claims that the determination that the shop was warmer than the house and that the shop roof was warmer than its walls was impossible from where Det. Patten claimed to have been positioned because from that point the house and the shop are in line with one another. White submits a photograph of the view of the house and the shop from the identified vantage point. This photograph allegedly shows that Det. Patten could not have made any comparison of the relative heat of the walls and roofs of the house and shop because the walls of the shop are totally obscured by the house and the roof of the shop is only slightly higher than the roof of the house and therefore the two roofs would have been indistinguishable through the heat scope.
 
 
 27
 In fact, the photograph makes clear that both buildings were visible from where the thermal imaging observations were made. Moreover, defendant's arguments that the positions of the two roofs would have made it impossible to distinguish between them through the scope is unsupported by evidence of any kind.
 
 
 28
 Finally, White argues that Det. Patten knew that the informants were not telling the truth. He claims that there had been a longstanding "feud" between the Whites and the couple suspected by the defense to be the confidential informants, of which the police, including Det. Patten, were well aware. White argues that this animosity between the Whites and the suspected informants shows that the informants were motivated to lie about the White's activities to the police. At the least, he argues, this information should have been included in the warrant affidavit.
 
 
 29
 However, even if White's assumption about the identities of the confidential informants is correct, the veracity of an informant is not a proper issue for a Franks hearing. United States v. Perdomo, supra, 800 F.2d at 921. In United States v. Elliott, 893 F.2d 220 (9th Cir.1990), cert. denied, 498 U.S. 904 (1990), the court found that the credibility of an informant who had just broken up with defendant and who "wanted to burn him" was not undercut by this apparent motive to testify against him. Id. at 224; see also United States v. Hodges, 705 F.2d 106, 108 (4th Cir.1983) ("Even if we accept the inference that [the informant] harbored ill will toward [the defendant], her credibility cannot be rejected on this ground.")
 
 
 30
 We hold that because defendant did not make a substantial preliminary showing entitling him to a Franks hearing the district court properly refused this request. The subsequent denial of the motion to suppress was then entirely appropriate.
 
 
 31
 B. Did The Trial Court Properly Enhance White's Sentence For Possession Of A Firearm?
 
 
 32
 The application of the Sentencing Guidelines is reviewed de novo, although the district court's finding that the defendant possessed a firearm during the commission of a narcotic offense is reviewed for clear error. United States v. Stewart, 926 F.2d 899, 900 (9th Cir.1991). USSG Sec. 2D1.1(b)(1) states:
 
 
 33
 If a dangerous weapon (including a firearm) was possessed, increase by 2 levels.
 
 
 34
 The commentary following this guideline notes that:
 
 
 35
 The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.
 
 
 36
 U.S.S.G. Sec. 2D1.1, comment. (n. 3).
 
 
 37
 White argues that it was clearly improbable that the shotgun found in his truck was connected with his growing of marijuana. He argues that he used the pick-up truck for all his transportation needs and not only for activities associated with his growing operation. Because he lives in a rural area and because it is common for rural Oregonians to carry shotguns in their vehicles for dispatching injured animals found on the road, defendant argues that his shotgun was the "functional equivalent" of the unloaded hunting rifle in the closet.
 
 
 38
 The purpose of the enhancement is to lessen "the danger of violence when drug traffickers possess firearms." U.S.S.G. Sec. 2D1.1, comment. (n. 3). While a shotgun may be used for hunting or dispatching animals, it is also effective in threatening, injuring, or killing human beings. White's possession of this weapon in his vehicle was not improbably connected to his marijuana grow. The enhancement was properly applied.
 
 CONCLUSION
 
 39
 The ruling of the district court is affirmed.
 
 
 
 *
 The panel unanimously finds this case suitable for submission without oral argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 The HONORABLE WILLIAM A. INGRAM, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3