UNITED STATES of America, Appellee,

v.

Joseph Harlin SPANIER, Appellant.

UNITED STATES of America, Appellee,

v.

John Michael FOLKERTS, Appellant.

Nos. 76–2174, 76–2175.

United States Court of Appeals,
Ninth Circuit.

Jan. 19, 1977.

---

Irwin H. Schwartz, Seattle, Wash., for appellant.

Jerald E. Olson, Asst. U. S. Atty., Seattle, Wash., for appellee.

Before ELY, CARTER, and GOODWIN, Circuit Judges.

GOODWIN, Circuit Judge:

The principal issue in these consolidated appeals is whether certain evidence incriminating to Folkerts and Spanier in their bank-robbery trial should have been suppressed.

Two armed men wearing ski masks robbed a Seattle bank and left the scene in an automobile. Witnesses reported the license number of the car to the police. A few minutes after the robbery, the reported automobile was found parked in front of a house about a mile from the bank. A ski mask was observed inside the car. After the officers had surrounded the house, Folkerts ran outside, was shot at, and ran back inside. The officers next saw smoke and sparks come out of the chimney. Then two men, one woman, and two children emerged from the house and surrendered to the police. Officers then entered the house to see if anyone else was inside. While in the house, the officers observed smoking paper in the fireplace. Some officers guarded the house while other officers went to a magistrate for a search warrant. With the warrant, they returned and searched the house.

The search produced a burned corner of a five dollar bill, two pistols, some pistol ammunition, clothing, and a quantity of fireplace ashes. The ski mask was taken from the parked car. The car was impounded, and when later examined for fingerprints, it yielded a print of Folkerts.

The arrest of Folkerts and Spanier was based upon the facts previously noted. These facts supplied probable cause, and the arrest was legal without a warrant. The

search of the house, with a warrant, was also lawful.

The appellants argue that the first entry into the house, to check whether additional confederates were inside, was illegal because made without a warrant. This conclusion does not follow. It is true that the officers had control of the only two bank robbers they knew about before any officer entered the house, but they had no reason to believe that the robbers were acting alone, or that everyone connected with the crime had left the house. It was not only prudent to check the house for additional confederates, it would have been careless not to do so. While in the house, the officers had no duty to shut their eyes. Nonetheless, they obtained a warrant before they made any detailed search, and before they seized and removed any articles of evidence. The affidavit for the search warrant did not detail any facts observed upon the entry into the house. Under the peculiar circumstances of this case, we hold that the first entry of the house was proper police work, and that the first entry did not immunize the house, as the appellants would have it, from a subsequent search after a warrant had been obtained.

In *United States v. McLaughlin*, 525 F.2d 517, 521 (9th Cir. 1975), we held that the officers were not obliged to lay siege to a house until other officers could return with a warrant, but could exercise good sense and make the necessary arrests and safeguard the premises against the loss and destruction of evidence by making an entrance for the limited purpose of making certain that the premises were empty. We followed that case in *United States v. Grummel, Jr.*, 542 F.2d 789 (9th Cir., 1976). In the case at bar, the officers likewise had the right to make the house secure so that, when they returned with a warrant, whatever evidence there was at the time of the arrest would still be there.

The other points briefed and argued raise no substantive issues.

Affirmed.

JAMES M. CARTER, Circuit Judge, concurring specially:

I concur in Judge Goodwin's opinion.

I would add the following in support of the judgment:

"The officers, having observed smoke and sparks coming out of the chimney, and knowing that money and checks had been taken from the bank, had a right to enter the house for the purpose of preventing, if possible, the destruction of evidence."