UNITED STATES of America,
Plaintiff–Appellee,

v.

Wayne ALLARD, Defendant–Appellant.

No. 79–1821.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 30, 1980.

Decided Oct. 14, 1980.

Rehearing Denied Jan. 8, 1980.

Octavia Chambliss, Seattle, Wash., for defendant–appellant.

Frances J. Diskin, Asst. U. S. Atty., Seattle, Wash., for plaintiff–appellee.

Before ELY, Senior Circuit Judge, NELSON, Circuit Judge, and KARLTON,* District Judge.

KARLTON, District Judge.

In *United States v. Allard,* 600 F.2d 1301 (9th Cir. 1979) ("*Allard* I"), this Court held that a warrantless entry into defendant's hotel room violated the Fourth Amendment. The Court remanded the case to the district court to determine "whether the evidence the government seeks to admit was in fact tainted by the illegal entry," *Id.* at 1302, in light of the fact that the government subsequently obtained a search warrant that was not on its face based upon any information discovered pursuant to the illegal entry. On remand, the district court found that the government's decision to seek a search warrant was not tainted by

---

* The Honorable Lawrence K. Karlton, United States District Judge, Eastern District of California, sitting by designation.

any information discovered during the illegal entry and denied appellant's motion to suppress evidence found in the search. This appeal followed.

As we explain, although the district court's finding is not clearly erroneous, we nonetheless reverse for reasons not reached in *Allard* I.[1] We hold that suppression is required because the ongoing illegal seizure of the contents of the hotel room could not, under these facts, be cured by procuring a search warrant even though that warrant was not based upon facts discovered as a result of the illegal seizure.

## I

## ALLARD I

In *Allard* I this Court held that the initial warrantless entry into appellant's hotel room could not be justified by "exigent circumstances" or on the theory that the occupant of the room consented to the entry. Moreover, the Court held that the fact that a warrant was later obtained "could not retroactively authorize the entry." *Id.* at 1304. Nonetheless, the government argued that "the evidence should not have been suppressed because it did not result from the illegal entry, but from the search pursuant to a legal warrant." *Id.* at 1304–05 (fn. omitted). In short, the government argued that the evidence was untainted since its seizure was pursuant to the warrant and the warrant was supported by an affidavit untainted by the illegal search. In examining the government's claims that it "learned of the evidence 'from an independent source'," *Wong Sun v. United States*, 371 U.S. 471, 487, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963) (quoting *Silverthorne Lumber Co. v. United States*, 251 U.S. 385,

392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920)), the *Allard* I court looked to three prior Ninth Circuit cases for guidance. In *United States v. Bacall*, 443 F.2d 1050 (9th Cir. 1971), *cert. denied*, 404 U.S. 1004, 92 S.Ct. 565, 30 L.Ed.2d 557 (1971), the court held that even if a subsequent search was not "wholly independent" of an unlawful seizure, the seized items were nonetheless not "tainted" if the evidence was obtained without resort to any knowledge gained from the illegal search or at least the effect of any such knowledge was *"de minimis."* *Id.* at 1057–59, *cited in Allard* I, 600 F.2d at 1305. Moreover, if the illegally obtained evidence "merely intensified" a subsequent investigation, suppression was not warranted. *Allard* I, 600 F.2d at 1305 (*citing United States v. Choate*, 576 F.2d 165, 186 (9th Cir. 1978), *cert. denied*, 439 U.S. 953, 99 S.Ct. 350, 58 L.Ed.2d 344 (1978) (Hufstedler, J., concurring and dissenting) and *United States v. Cella*, 568 F.2d 1266, 1285 (9th Cir. 1977).

The *Allard* I court cited with approval the analysis of the allegation of the burden of proof with regard to an "independent source" claim set forth by Judge Hufstedler in *United States v. Choate, supra,* at 186:

While the ultimate burden of proof is on the Government to show the absence of taint, the defendant must first establish a factual nexus between the illegality and the challenged evidence. *The mere establishment of an illegal search does not place upon the Government the burden of affirmatively proving that each and every piece of evidence is free from taint.* (Emphasis added.)

Because the trial court had suppressed the evidence upon a showing that the initial entry was illegal,[2] the record before the

---

1. We can well empathize with the district court in this case. The court has now had the unfortunate experience of being reversed twice by the Court of Appeals; once for suppressing the evidence and now for failing to do so. We observe that in *Allard* I the court remanded the case because the hearing below had failed to fully develop the facts required for disposition of the legal issues then presented by the appeal. Here, the facts have been developed and

we must now resolve all the legal issues presented.

2. The trial court apparently relied upon an unpublished memorandum opinion, *United States v. Greenberg*, 556 F.2d 589 (9th Cir. 1977). As the *Allard* I court explained, however, no case cited in the memorandum opinion "suggests that an illegal *entry* may taint evidence found in a subsequent warrant-authorized search, where the warrant was obtained by indepen-

*Allard* I court did not demonstrate whether or not the defendants had established "the requisite 'factual nexus between the illegality and the challenged evidence.'" 600 F.2d at 1306 (fn. omitted). Since "the question of taint was not fully explored below," *id.*, the court remanded the case to the district court to determine "whether the evidence the government seeks to admit was in fact tainted by the illegal entry," *id.* at 1302.

## II

## FACTS

As the *Allard* I court recounted and as facts elicited on remand further reveal, one group of government agents had gone to appellant's hotel room while another group was conducting a lawful search at the home of a confederate. The first group of agents entered the hotel room and determined to "stay there whatever Mr. Berg [the occupant of the room] did or said," and to not allow Berg to leave, or even go to the bathroom alone, "no sir!" These agents were subsequently reinforced by two additional agents. Although the agents may have originally gone to the hotel room to "continue their investigation," once inside the room they decided that they had "probable cause to stay there," and that a search warrant should be obtained.

One of the agents went to call the United States Attorney to ask for a search warrant. At that time no application had been made for a search warrant although the United States Attorney contemplated seeking one because no drugs had, as of yet, been discovered in the home of the confederate. The United States Attorney reacted to the call from the agent with "extreme disappointment" because he feared that the entry "might destroy whatever case would resolve out of a search of that room pursuant to a valid warrant." The agent told the United States Attorney that he would "go back up in the room and await your call."

Following this call, the United States Attorney prepared an application for a search warrant which not only did not rely on any evidence discovered by the agents in the hotel room, but did not even disclose that government agents were presently in possession of the room and its contents. The United States Attorney decided to omit any such references in the apparently good faith belief that such references would "taint" any subsequent search warrant.

A search warrant was subsequently obtained and executed some two hours after the agents initially seized the hotel room. The district court found on remand that the decision to seek a search warrant was not motivated by anything discovered during the illegal entry or, if it was, any taint was *"de minimis."* Since the search warrant was not based upon facts discovered in the hotel room, the motion to suppress was denied.

## III

## UNLAWFUL SEARCHES, INDEPENDENT SOURCES AND UNLAWFUL SEIZURES

While we agree with the government that the district court's factual finding was not clearly erroneous, we do not agree that a finding that the search warrant was based upon an independent source ends the matter. As we shall point out, the fact that the search warrant was "untainted" does not immunize the government from a suppression motion because in this case the evidence was illegally seized *before* the search warrant was obtained.

In *Allard* I, the district court suppressed the evidence upon determining that an illegal entry had occurred. The Court of Appeals was thus confronted with the issue of whether an illegal entry automatically tainted all of the evidence in the case. Thus, analysis in that case focused on the issues of independent source and attenuation since, as *Allard* I noted, an illegal entry does not automatically taint a subsequent

---

dent means. To the extent that *Greenberg* supports such a proposition, it is inconsistent with

*Choate, Cella,* and *Bacall."* 600 F.2d at 1306 n.5 (Emphasis added).

warrant and search. *Allard v. United States, supra,* at 1306 n.5. Obviously, if the challenged evidence is discovered through a source independent of the illegal entry, no factual nexus between the illegal conduct and the challenged evidence can be established. *See Wong Sun v. United States, supra,* 371 U.S. at 487, 83 S.Ct. at 417.

Accordingly, the court remanded for the purpose of determining the relationship between the unlawful *entry* (which it properly characterized as a search) and the evidence seized. Given the factual and procedural posture *Allard* I presented, the court had no occasion to consider the effect of an illegal and continuing *seizure* of the evidence prior to the issuance and exercise of the search warrant.

It appears to us, however, that where, as here, the entry and search were not the sole unlawful conduct but were followed by a continuing illegal *seizure*, we must consider the implications of that unlawful seizure. The Fourth Amendment, it must be remembered, prohibits *both* unlawful searches and unlawful seizures. Here again the ultimate question to be resolved is whether "the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States, supra,* at 488, 83 S.Ct. at 417.[3]

We begin with the facts elicited in the district court's two hearings. The Drug Enforcement Administration ("DEA") officials entered the motel room and secured it. Neither the occupant of the room nor its effects were permitted to leave or be removed. As the *Allard* I court noted, the entry constituted a search; however, and in addition, by any rational test the conduct also constituted a seizure. The appropriate analysis is implicit in this court's decision in

*United States v. Bacall, supra.* The complex facts of *Bacall* may be briefly summarized. Defendant was charged with filing false customs declarations. Although defendant's warehouse had been illegally seized, and the fabrics therein secured, the government's case was in no way based upon the seized fabrics but was in fact based upon other evidence discovered independent of the illegal seizure. The *Bacall* court applied the traditional *Wong Sun* analysis and found that the proffered evidence had been discovered by means independent from the seizure. In short, the court applied the traditional "independent source" test of *Wong Sun.*

The court recognized, however, that different facts would require a different analysis:

> Alternatively, it may be crucial to a determination of taint that, at the time of their initial illegal action, the officers had no reason to suspect the defendant of any crime other than that in connection with which the action was undertaken, and that they had no reason to believe that the action would turn up specific evidence of any other crime. . . . Put more bluntly, *it may be crucial 'that an object of the illegal conduct was the securing of the evidence sought to be suppressed.'* Allen v. Cupp, 9 Cir., 1970, 426 F.2d 756, 759 [sic]. *United States v. Bacall, supra,* at 1056 (emphasis added).

The *Bacall* court found that the warehouse had been seized for a purpose other than to secure evidence to support the ultimately charged crime and that the evidence the government ultimately relied upon had been discovered through "investigatory serendipity." *Id.* at 1057. The court significantly noted that had defendant been prosecuted for falsely stating the composition of

---

**3.** It is clear that any fruits of the illegal seizure would have been suppressed *absent* a subsequently commissioned search warrant. Cf. *Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969). Mechanical application of the traditional *Wong Sun* "independent source" analysis where a search warrant is subsequently commissioned albeit supported by an affidavit that relies upon independent evidence, would allow police officers to treat the warrant requirement as merely an ex post facto formality. *See United States v. Griffin,* 502 F.2d 959 (6th Cir. 1974), *cert. denied,* 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 646 (1974) (per curiam); *United States v. Korman,* 614 F.2d 541, 551–52 (6th Cir. 1980), *cert. denied,* 446 U.S. 952, 100 S.Ct. 2918, 64 L.Ed.2d 808 (1980) (Merritt, J., dissenting).

the fabrics—the crime being investigated when the warehouse was seized—" '[t]here would be no way in the world that [the government] could remove the taint of the illegal search.' " *Id.* at 1060. In examining the applicability of the exclusionary rule in light of its purpose, the court observed that the "threat" of suppression, where the evidence seized was in fact the evidence sought, would constitute "adequate deterrence." *Id.;*[4] *accord, United States v. Jones,* 608 F.2d 386, 391 (9th Cir. 1979).

Although no Ninth Circuit case has directly ruled on the question,[5] the Sixth Circuit has applied an analysis consistent with *Bacall* under circumstances legally indistinguishable from the present case. In *United States v. Griffin,* 502 F.2d 959 (6th Cir. 1974), *cert. denied,* 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 645 (1974) (per curiam), government agents who had probable cause to search but no warrant, forcibly entered and secured an apartment. Contraband was in plain sight. At that point an agent was sent to procure a search warrant. Like the present case, the affidavit upon which the warrant was issued did not contain any facts discovered as a result of the illegal entry. *Id.* at 960. No exigent circumstances were established. The court held that, absent exigent circumstances, the police "clearly may not force entry to a home

without a search warrant simply because they think they have probable cause to believe evidence of crime may be found therein." *Id.* at 961. The fact that the police subsequently planned to get a search warrant did not erase the taint of illegality. "The assertion by police (after an illegal entry and after finding evidence of crime) that the discovery was 'inevitable' because they planned to get a search warrant and had sent an officer on such a mission, would as a practical matter be beyond judicial review. Any other view would tend in actual practice to emasculate the search warrant requirement of the Fourth Amendment." *Id.; accord, United States v. Hayes,* 518 F.2d 675 (6th Cir. 1975). *See also People v. Shuey,* 13 Cal.3d 835, 533 P.2d 211, 120 Cal.Rptr. 83 (1975).

The facts of the present case illustrate the appropriateness of such an analysis. It is clear, contrary to the government's assertion, that the officer who "secured" the hotel room did so for the purpose of maintaining the status quo while a search warrant was obtained, and that the United States Attorney who ultimately applied for the warrant was so informed. The room was "secured" for two hours while the officers awaited the warrant, that is, the room and its contents were *seized.* "[A]dequate

---

**4.** The court also suggested that the offensiveness of the action should be considered, noting that the search of the warehouse was less intrusive than the search of a house, or a body cavity. *Id.* While we express no opinion as to the validity of this factor (*Cf. Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967) ("[T]he Fourth Amendment protects people, not places.")), we note that the Supreme Court recently reemphasized the transcendent privacy interest in private residences. *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Moreover as we explain, several factors implicit in the present case suggest a high degree of constitutional "offensiveness." *See Bacall, supra,* at 1057.

**5.** Superficially similar Ninth Circuit cases are distinguishable because in those cases the officers either had legal justifications for the initial entry or exigent circumstances justified the seizure. *See, e. g., United States v. Spanier,* 597 F.2d 139 (9th Cir. 1977) (valid arrest, exigent circumstances, independent search warrant); *United States v. Grummel,* 542 F.2d 789 (9th Cir. 1976) (per curiam), *cert. denied,* 429 U.S.

1051, 97 S.Ct. 763, 50 L.Ed.2d 767 (1977) (lawful entry to effect arrest, exigent circumstances); *United States v. McLaughlin,* 525 F.2d 517 (9th Cir. 1975), *cert. denied,* 427 U.S. 904, 96 S.Ct. 3190, 49 L.Ed.2d 1198 (1976) (legal entry, exigent circumstances); *see also United States v. Picariello,* 568 F.2d 222, 225–26 (1st Cir. 1978) (exigent circumstances); *United States v. Hayes,* 518 F.2d 675, 678 (6th Cir. 1975). *Cf. United States v. Romero,* 585 F.2d 391 (9th Cir. 1978), *cert. denied,* 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d 492 (1979) (federal warrant totally independent of illegal state seizure). In the present case, in contrast to these cases, the initial entry and subsequent seizure of the room and its contents was without *any* legal justification. *Allard* I expressly ruled that there were no exigent circumstances that justified the entry. Moreover, the seizure was solely for the purpose of securing the room until a search warrant was procured. Finally, the evidence subsequently discovered is the very evidence challenged herein.

deterrence," *Bacall, supra,* at 1060, of unlawful police activity requires suppression under these circumstances unless the government can demonstrate that the seizure made no practical difference.[6] Any other holding would encourage law enforcement to "secure" or seize places and things with or without probable cause in the absence of a warrant or exigent circumstances while they seek some independent evidentiary basis to justify a search warrant. Such post hoc justifications are alien to the Fourth Amendment warrant and reasonableness requirements. *United States v. Griffin, supra; United States v. Allard, supra,* at 1304 ("The later warrant could not retroactively authorize the entry.").[7]

Moreover, as the facts in this case suggest, any other solution threatens to debase the magistrate's Fourth Amendment function. Upon learning that the room was secured, the United States Attorney could either have disclosed the fact of the seizure to the magistrate in his application for a search warrant, with the very real possibility that the warrant would be tainted under classic *Wong Sun* doctrine or, as in the present case, the United States Attorney could deliberately withhold the fact of the ongoing seizure from the magistrate and thus eviscerate the very purpose of the warrant requirement which is to place a neutral magistrate between the public and police conduct. *Cf. Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *United States v. Rettig,* 589 F.2d 418 (9th Cir. 1978); *United States v. Korman,* 614 F.2d 541, 551 (6th Cir. 1980), *cert. denied,* 446 U.S. 952, 100 S.Ct. 2918, 64 L.Ed.2d 808 (1980) (Merritt, J. dissenting).

This dilemma, of course, could have been avoided by not seizing the room in the first place. Normal police practices suggest a number of nonintrusive means to insure that the "cat doesn't get out of the bag"

while police seek a search warrant. *See United States v. Flickinger,* 573 F.2d 1349 (9th Cir. 1978), *cert. denied,* 439 U.S. 836, 99 S.Ct. 119, 58 L.Ed.2d 132 (1978); *United States v. Hayes,* 518 F.2d 675, 678 (6th Cir. 1975). What police may not do, of course, is create their own exigencies through illegal conduct and then "secure" the premises on the theory that the occupants would otherwise destroy evidence or flee. *See United States v. Korman, supra,* at 550 (Merritt, J., dissenting). *Cf. Allard I, supra,* at 1304 n.2 ("If exigent circumstances were created, they resulted from the agents' own conduct."); *United States v. Flickinger, supra,* at 1354–56. On the other hand, if exigent circumstances truly exist, the police may lawfully enter and secure the premises. *See, e. g. United States v. McLaughlin, supra.*

Accordingly, we hold that where a defendant establishes that the government illegally "secured" and thereby seized evidence, and that seizure continues while the government procures a search warrant, the defendant has demonstrated a sufficient nexus between the illegality and the subsequently seized evidence notwithstanding any "independent source" supporting the warrant. Upon establishing this nexus, the burden shifts to the government to demonstrate that it would have both independently discovered and successfully obtained the proffered evidence notwithstanding the illegal seizure. As noted, no such showing was made in the present case and, accordingly, the proffered evidence should have been suppressed.[8] Since we cannot say that the admission of the evidence was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the judgment of the district court is reversed.

---

**6.** For instance, the government might attempt to prove that under the circumstances the evidence would not have been moved and its discovery would have been inevitable. No such evidence was presented in this case.

**7.** We recognize that a different analysis may be appropriate where the object seized is a vehi-

cle. *See Chambers v. Maroney,* 399 U.S. 42, 48, 52, 90 S.Ct. 1975, 1979, 1981, 26 L.Ed.2d 419 (1970).

**8.** Because of the resolution of this case, it is unnecessary to reach appellant's other contentions.