[Cite as *State v. Martin*, 2020-Ohio-3579.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

WILLIAM E. MARTIN, II,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 18 CO 0033**

---

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2017 CR 122

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Robert Herron*, Prosecutor, *Atty. Ryan Weikart,* Assistant Prosecutor, Columbiana County Prosecutor's Office, 105 South Market Street, Lisbon, Ohio 44432, for Plaintiff-Appellee, and

*Atty. Rhys Cartwright-Jones*, 42 North Phelps Street, Youngstown, Ohio 44503, for Defendant-Appellant.

Dated:
June 26, 2020

**Donofrio, J.**

{¶1} Defendant-appellant, William Martin, appeals his convictions and sentence in the Columbiana County Common Pleas Court following a no contest plea for: one count of having weapons while under disability; one count of possession of cocaine; one count of possession of heroin; one count of possession of marijuana; one count of trafficking in heroin; two major drug offender specifications; and one forfeiture specification.

{¶2} Deputy Brett Grabman of the Columbiana County Sherriff's Office was an undercover narcotics detective with the Columbiana County Drug Task Force (Task Force). On the morning of March 22, 2017, Deputy Grabman received a call from two potential informants. The informants told Deputy Grabman that appellant was selling large quantities of heroin, cocaine, and marijuana from a house at 533 West Washington Street in Lisbon, Ohio (the house).

{¶3} Deputy Grabman and other Task Force officers utilized these informants to perform a controlled buy of drugs from appellant later that afternoon. During this purchase, Deputy Grabman heard through the audio surveillance equipment placed on the informants that appellant was attempting to arrange transportation for a large amount of marijuana. The informants purchased $500 worth of heroin and $100 worth of crack cocaine from appellant.

{¶4} On March 28, 2017, Deputy Grabman utilized the same informants to perform a second controlled buy from appellant at the house. During this controlled buy, the informants purchased $1,000 worth of heroin from appellant. Immediately after this controlled buy, an altercation between the informants and Task Force officers arose related to the informants possessing marijuana paraphernalia. Task Force officers told the informants why they were not permitted to have anything illegal in their possession and the informants became "very aggressive." (Supp. I Tr. 20). The informants left and were not on good terms with Task Force officers.

Case No. 18 CO 0033

{¶5}     Immediately after the informants left, Task Force officers had a meeting at the Lisbon Police Department to determine how to proceed with appellant's investigation. During this meeting, Task Force officers discovered that appellant had an outstanding arrest warrant for two felony drug possession charges.

{¶6}     Approximately 40 minutes after the altercation between Task Force officers and the informants, Task Force officers returned to the house to serve the outstanding arrest warrant. Task Force officers knocked and announced their presence but no one answered the door despite officers hearing people moving throughout the house. Task Force officers entered the house by force. Task Force officers found appellant in an upstairs bedroom closet with guns in his immediate area. A search of appellant incident to his arrest yielded just under $2,000 with $1,000 of that money being bills the Task Force used to make the controlled buys.

{¶7}     Two women were also present in the home when appellant was arrested. Chief Michael Abraham of the Lisbon Police Department transported appellant to jail, the two other people were cleared from the house, and the house was secured. Task Force officers did not search the house at this time. After appellant's arrest and the house was cleared and secured, Deputy Grabman applied for a search warrant for the house.

{¶8}     Deputy Grabman's affidavit for the search warrant included: the two controlled buys, appellant's arrest warrant, appellant's arrest, and appellant's criminal history. The Lisbon Municipal Court granted the search warrant and Task Force officers subsequently searched the house. The search yielded large amounts of marijuana, heroin, crack cocaine, prescription pills, over $58,000 in cash, and multiple guns.

{¶9}     On May 18, 2017, a Columbiana County Grand Jury indicted appellant on the following charges: Count One for having a weapon while under a disability in violation of R.C. 2923.13(A)(2), a third-degree felony; Count Two for possession of cocaine in violation of R.C. 2925.11(A)(C)(4)(f), a first-degree felony, with a major drug offender specification pursuant to R.C. 2941.1410(A); Count Three for possession of heroin in violation of R.C. 2925.11(A)(C)(6)(e), a first-degree felony, with a forfeiture specification in an amount of $57,419 pursuant to R.C. 2941.1417(A); Count Four for possession of marijuana in violation of R.C. 2925.11(A)(C)(3)(e), a third-degree felony; Count Five for trafficking heroin in violation of R.C. 2925.03(A)(1)(C)(6)(c), a fifth-degree felony; Count

Six for trafficking cocaine in violation of R.C. 2925.03(A)(1)(C)(4)(a), a fifth-degree felony; and Count Seven for trafficking heroin in violation of R.C. 2925.03(A)(1)(C)(6)(d), a third-degree felony. A superseding indictment added a major drug offender specification pursuant to R.C. 2941.1410(A) to Count Three. A bill of particulars subsequently amended the forfeiture amount in Count Three to $57,277. Appellant entered a not guilty plea on all charges.

{¶10} On June 19, 2017, appellant filed his first motion to suppress. This motion sought to suppress all evidence obtained from the house and generally argued that Task Force officers had conducted an unreasonable warrantless search of the house. Appellant filed an amended motion to suppress on July 10, 2017 which argued that Task Force officers were illegally present in the house and anything they observed while illegally present in the house could not provide a basis for the search warrant.

{¶11} On July 12, 2017, the trial court held a hearing on appellant's first motion to suppress. The only witness to testify at this hearing was Deputy Grabman, who testified to the above stated events. On cross-examination, Deputy Grabman testified that Task Force officers did not physically possess appellant's arrest warrant when they entered the house and that it was more than likely some officers were still inside the house to secure the two other occupants while he obtained the search warrant.

{¶12} On August 29, 2017, the trial court denied appellant's first motion to suppress. The trial court found that there was sufficient evidence to indicate appellant resided at the house and Task Force officers were permitted to enter the house due to appellant's arrest warrant. The trial court also held that there was sufficient probable cause for the Task Force to obtain a search warrant and the evidence showed that no search occurred until after Deputy Grabman obtained the search warrant.

{¶13} On February 21, 2018, appellant filed a second motion to suppress. Appellant argued, relevant to this appeal, that the search of the house was illegal because Deputy Grabman omitted material facts in his affidavit for the search warrant. Specifically, appellant argued that Deputy Grabman omitted the fact that the informants compromised the March 28, 2017 controlled buy by possessing marijuana paraphernalia. Appellant also argued that Deputy Grabman's affidavit omitted the fact that Task Force officers had

already entered the home, arrested appellant, and may have still been present in the home while the search warrant was being obtained.

{¶14}   On March 14, 2018, the trial court held a hearing on appellant's second motion to suppress.  At this hearing, Lieutenant Brian McLaughlin testified that the Task Force's agreement with the informants included paying them 30% of all transactions the informants secured.   This agreement was made on the same day the informants contacted the Task Force, which was also the same day of the first controlled buy.

{¶15}   Lieutenant McLaughlin and Deputy Grabman both testified that after the first controlled buy, the informants told them that appellant wanted them to transport a large amount of marijuana from Chicago, Illinois.   Lieutenant McLaughlin told the informants not to transport drugs for appellant.   Deputy Grabman testified that despite this instruction, the informants transported a substantial amount of drugs from Chicago to the house.  Deputy Grabman also testified that he believed he disclosed the informants transporting drugs for appellant in his affidavit for the search warrant.

{¶16}   In a judgment entry dated May 18, 2018, the trial court denied appellant's second motion to suppress.  Relevant to this appeal, the trial court held that appellant did not satisfy his burden to show that any omissions in Deputy Grabman's affidavit were material.  The trial court also held that it was permissible for Task Force officers to secure the house while applying for a search warrant.

{¶17}   On August 23, 2018, appellant filed a third motion to suppress, which was subsequently limited to two issues: whether Task Force officers conducted an illegal search after executing the arrest warrant but prior to obtaining the search warrant and whether Task Force officers violated the knock-and-announce rule.  Plaintiff-appellee, the State of Ohio, called Lieutenant McLaughlin who generally testified to the same facts that were previously testified about at the prior two suppression hearings.   On August 27, 2018, the trial court denied this motion.

{¶18}   Also on August 27, 2018, appellant reached a plea agreement with the state.  The state agreed to dismiss Counts Five and Six.  In exchange, appellant pled no contest to all remaining counts.  The trial court accepted appellant's no contest plea and scheduled a sentencing hearing for October 12, 2018.

**{¶19}** At the scheduled sentencing hearing, appellant moved that his convictions for Counts Two, Three, and Four (possession of cocaine, heroin, and marijuana respectively) be merged for sentencing purposes. The trial court overruled this motion and sentenced appellant to an aggregate prison term of 31 years and ordered appellant to forfeit $57,277.

**{¶20}** The trial court memorialized appellant's sentence in a judgment entry dated October 15, 2018. Appellant timely filed his notice of appeal on October 30, 2018. Appellant now raises four assignments of error.

**{¶21}** Appellant's first assignment of error states:

> THE TASK FORCE OFFICER'S OMISSION OF HIS CONFIDENTIAL INFORMANT'S CRIMINAL BEHAVIOR OF TRANSPORTING LARGE QUANTITIES OF DRUGS FROM CHICAGO TO LISBON, OHIO, ALONG WITH POSSESSION OF DRUG PARAPHERNALIA AFTER A CONTROLLED BUY, WHILE EMPLOYED AS INFORMANTS, FROM THE AFFIDAVIT FOR SEARCH WARRANT WERE MATERIAL OMISSIONS RENDERING THE APPLICATION INSUFFICIENT TO ESTABLISH PROBABLE CAUSE.

**{¶22}** Appellant argues that Deputy Grabman's affidavit for the search warrant of the house omitted five material facts: the informants transported a large amount of drugs to the house; Task Force officers instructed the informants not to transport drugs for appellant; the informants were in possession of marijuana paraphernalia after the second controlled buy; the informants had an argument with Task Force officers after the second controlled buy; and Deputy Grabman did not explain the informants' reliability or the veracity of their information.

**{¶23}** The proper standard of review to determine whether probable cause exists for the issuance of a search warrant is the totality of the circumstances. See *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, ¶ 1. The Ohio Supreme Court has also held:

In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant.

*State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989) at paragraph two of the syllabus citing *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 257 (1983).

**{¶24}** As for claims that an affidavit for a search warrant contains false statements, the U.S. Supreme Court has held:

where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks v. Delaware*, 438 U.S. 154, 155-156, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

**{¶25}**  Omissions are false statements under *Franks* if they are "designed to mislead, or * * * made in reckless disregard of whether they would mislead, the magistrate." (Emphasis deleted.) *State v. Waddy,* 63 Ohio St.3d 424, 441, 588 N.E.2d 819 (1992) quoting *U.S. v. Colkley,* 899 F.2d 297 (4th Cir.1990).  "Reckless disregard" under *Franks* means that the affiant had serious doubts of an allegation's truth.  *Id.* citing *U.S. v. Williams,* 737 F.2d 594 (7th Cir.1984).

**{¶26}**  Thus, there are two requirements in order to successfully challenge a warrant as containing material omissions.  First, it must be shown by a preponderance of the evidence that the omissions were made with reckless disregard for the truth (the intent requirement).  Second, had the omitted information been in the affidavit for the warrant, the omissions would have undermined the probable cause determination (the materiality requirement).

**{¶27}**  Based on the motions and transcripts, appellant's *Franks* motion was his second suppression motion.  As such, this assignment of error will be limited to whether the trial court erred when it denied the second motion to suppress.

**{¶28}**  Deputy Grabman's March 28, 2017 affidavit in support of a search warrant for the house begins by describing the Task Force's controlled buy process.  In essence, Task Force officers meet with informants, search the informants, send the informants to a target in order to purchase drugs, and then meet with the informants after the purchase where the informants relay all necessary information.

**{¶29}**  As it pertains to the investigation of appellant, Deputy Grabman's affidavit states the details of both controlled buys.  The affidavit also states that appellant arranged for the informants to meet with Hispanic males in Chicago in order for the informants to transport drugs.  But the affidavit does not state that Task Force officers instructed the informants to not transport drugs for appellant.

**{¶30}**  The affidavit then avers that Task Force officers discovered appellant's arrest warrant, the details of Task Force officers' entrance into the house, and that they located appellant with numerous guns in his immediate area.  It then details appellant's criminal history, which includes numerous felonies, occurring between 1996 and 2009.

**{¶31}**  Appellant primarily argues that Deputy Grabman's affidavit omits indications of the informants' reliability and those omissions are material.  He argues that

had the issuing judge been informed of the Task Force's instruction to the informants not to transport drugs, the informants transported drugs despite said instruction, the informants' argument with Task Force officers immediately after the second controlled buy, and the informants were being paid 30% of all transactions they conducted, the issuing judge would not have granted the search warrant.

**{¶32}** In support of this argument, appellant relies on the Fourth Circuit's decision in *U.S. v. Lull*, 824 F.3d 109 (4th Cir.2016). In *Lull*, a confidential informant worked with the Wake County North Carolina Sheriff's Office to perform a controlled buy. *Id.* at 111. The informant had previously worked with police in investigations but not with the Sheriff's Office. *Id.* The informant told the Sheriff's Office he could purchase drugs from Lull. *Id.* The Sheriff's Office arranged for the informant to purchase 3.5 grams of cocaine from Lull for $180. *Id.* at 111-112.

**{¶33}** Shortly before the buy, investigators searched the informant and provided him with $240 for the purchase. *Id.* at 112. The informant entered Lull's house, exited five minutes later, surrendered approximately four grams of cocaine and $40 to investigators, and identified Lull as the seller. *Id.* Investigators questioned the informant about the missing $20 and the informant claimed that he gave the $20 to Lull. *Id.*

**{¶34}** Investigators then strip searched the informant and "$20 dropped out of his underpants." *Id.* The investigators determined that the informant was unreliable, terminated the informant's employment, and arrested the informant for the felony of obtaining property under false pretenses. *Id.*

**{¶35}** Investigator Welch then filed for a search warrant for Lull's house. *Id.* at 112-113. Investigator Welch's affidavit did not mention the informant's theft, the felony arrest, or the informant's employment being terminated due to unreliability. *Id.* at 113. The state court magistrate granted the warrant. *Id.* at 112-113. The search of Lull's house revealed drugs, firearms, body armor, and $3,600 in cash. *Id.* at 113.

**{¶36}** Lull moved to suppress evidence of the search on the basis that Investigator Welch's affidavit contained material omissions. *Id.* The district court denied the motion holding that Investigator Welch's omission did not rise to the level of reckless disregard because the omitted acts occurred after the controlled buy and Investigator Welch believed that it had no impact on the purchase of narcotics. *Id.* at 114-116.

**{¶37}** In a split decision, the Fourth Circuit reversed the district court's judgment on Lull's suppression motion. With regard to the intent requirement, the Fourth Circuit held that Investigator Welch at least recklessly disregarded the truth when he omitted the information about the informant's theft and subsequent arrest. *Id.* at 116-117. The Fourth Circuit cited four factors as to why Investigator Welch acted with reckless disregard: (1) the decisiveness with which the Sheriff's Office acted in discharging and arresting the informant; (2) Investigator Welch's knowledge of the consequences of the informant's crime; (3) the temporal proximity of the arrest to the decision to omit information from the affidavit; and (4) the obvious impact of the informant's misconduct on any assessment of his reliability. *Id.* at 116.

**{¶38}** With regard to the materiality requirement, the Fourth Circuit noted that much of the information contained in Investigator Welch's affidavit came from the informant. *Id.* at 118. The Fourth Circuit held that the omissions rendered the magistrate unable to make a determination on the informant's reliability and the veracity of the informant's statements. *Id.* This conclusion was bolstered by the fact that the Sheriff's Office determined the informant was unreliable. *Id.* The Fourth Circuit then concluded that, when the information provided by the informant was removed from Investigator Welch's affidavit, there was insufficient evidence to give rise to probable cause for the search warrant. *Id.* at 118-119.

**{¶39}** *Lull* is distinguishable. The reason the informant in *Lull* was determined unreliable by investigators was because the informant stole from the investigators and was subsequently charged with a felony. In this case, there is no indication that Task Force officers terminated the informants' employment or charged the informants with any crime for transporting marijuana. There is no indication that Task Force officers believed the informants were unreliable. Deputy Grabman only testified that the informants transporting marijuana was "concerning." (Supp. II Tr. 47). Task Force officers in this case also conducted the first controlled buy without issues. Overall, the omissions in this case do not rise to the level in *Lull*. The omissions were not designed to mislead nor were they made in reckless disregard of whether they would mislead the issuing judge. Therefore, the intent requirement is not met.

{¶40} Moreover, the materiality requirement is not met. The reason the materiality requirement was met in *Lull* was because the informant stole from the investigators. No such act happened in this case. Additionally, there was sufficient evidence in Deputy Grabman's affidavit to establish probable cause for the search warrant, including: the results of the first controlled buy, the results of the second controlled buy, and Task Force officers executing the arrest warrant and finding appellant in the house with numerous guns in his immediate vicinity. Finding that neither of the *Franks* requirements were met, the trial court's judgment denying appellant's second motion to suppress was proper.

{¶41} Accordingly, appellant's first assignment of error is without merit and is overruled.

{¶42} Appellant's second assignment of error states:

THE TASK FORCE OFFICERS REMAINING IN THE RESIDENCE AFTER THE ARREST AND REMOVAL OF THE DEFENDANT IN ORDER TO PRESERVE ANY POSSIBLE EVIDENCE OF OTHER CRIMES WAS IN DIRECT VIOLATION OF DEFENDANT'S RIGHT TO BE FREE FROM UNWARRANTED SEARCHES AND SEIZURES AS GUARANTEED BY THE U.S. CONST. AMEND. IV AND OHIO CONST. ART. I § 14.

{¶43} Appellant argues that Task Force officers only applied for a search warrant of his home after they entered the house, arrested him, and secured the house. He argues that because the search warrant was applied for after the house was secured, his right against unreasonable searches and seizures was violated.

{¶44} This assignment of error challenges the trial court's judgment denying his first and third motions to suppress. As such, this assignment of error will be limited to the trial court's judgment on these two motions.

{¶45} Our standard of review with respect to a motion to suppress is first limited to determining whether the trial court's findings are supported by competent, credible evidence. *State v. Winand*, 116 Ohio App.3d 286, 288, 688 N.E.2d 9 (7th Dist.1996), citing *Tallmadge v. McCoy*, 96 Ohio App.3d 604, 608, 645 N.E.2d 802 (9th Dist.1994). Such a standard of review is appropriate as, "[i]n a hearing on a motion to suppress

evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). An appellate court accepts the trial court's factual findings and relies upon the trial court's ability to assess the witness's credibility, but independently determines, without deference to the trial court, whether the trial court applied the appropriate legal standard. *State v. Rice*, 129 Ohio App.3d 91, 94, 717 N.E.2d 351 (7th Dist.1998). A trial court's decision on a motion to suppress will not be disturbed when it is supported by substantial credible evidence. *Id.*

**{¶46}** Appellant does not dispute the relevant facts in this case, which have been previously set forth. Because appellant does not dispute the relevant facts and they are supported by competent and credible evidence from the record, we accept them as true.

**{¶47}** The issue appellant raises is that six or seven officers remained in the house after he was arrested and during Deputy Grabman's application for the warrant. He argues that because Task Force officers were still in the house while Deputy Grabman filed for the search warrant, the warrant constituted a retroactive search warrant.

**{¶48}** Appellant predominantly relies on, and compares this case to, *U.S. v. Allard*, 634 F.2d 1182 (9th Cir.1980). In *Allard*, federal agents illegally entered two hotel rooms. *Id.* at 1182. Once the agents were in the rooms and detained the occupants, they contacted the U.S. Attorney's Office in order to obtain a search warrant for the rooms. *Id.* at 1184. The U.S. Attorney's application for the warrant did not disclose that agents were currently in the hotel rooms or disclose any evidence agents observed while in the hotel rooms. *Id.* After approximately two hours, a search warrant was issued and agents searched the rooms. *Id.* Allard filed a motion to suppress evidence obtained from the searches, but the district court denied the motion holding that the search warrant was not obtained as a result of anything agents witnessed upon entering the hotel rooms and any taint to the evidence obtained was de minimis. *Id.*

**{¶49}** The Ninth Circuit reversed holding that the agents' continued presence in the hotel rooms for purposes of securing the rooms constituted an unreasonable warrantless seizure under the Fourth Amendment. *Id.* at 1187.

Case No. 18 CO 0033

{¶50}   *Allard* is distinguishable.  In *Allard*, federal agents illegally entered the hotel rooms.  In this case, Task Force officers legally entered the house to execute a validly issued arrest warrant for appellant.

{¶51}   The state cites the U.S. Supreme Court's ruling in *Segura v. U.S.*, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984).  *Segura* held there is no Fourth Amendment violation when officers enter a premises with probable cause, arrest the occupants with a legitimate possessory interest in the premises and its contents, and secure the premises from within to preserve the status quo while others, in good faith, are in the process of obtaining a warrant.  *Id*. at 798.

{¶52}   Appellant argues that *Segura* is factually distinguishable because in *Segura*, after law enforcement arrested all suspects, no one with a possessory interest in the home was present while law enforcement sought a search warrant.  He argues that, in this case, two people with a possessory interest in the house were secured in the house by Task Force officers while Deputy Grabman applied for the search warrant.

{¶53}  This is insufficient to distinguish *Segura*.  Appellant resided in the house and, therefore, he had a possessory interest in the house.  The fact that other people also had a possessory interest in the house does not negate appellant's possessory interest in the house and the probable cause Task Force officers had to secure a search warrant based on their investigation into appellant.  Task Force officers legally entered the house to execute appellant's arrest warrant.  Task Force officers arrested appellant, escorted him out of the house, and secured the house to preserve the status quo while Deputy Grabman applied for a search warrant.  Based on the above, the trial court's denial of appellant's first and third suppression motions was proper.

{¶54}   Accordingly, appellant's second assignment of error is without merit and is overruled.

{¶55}   Appellant's third assignment of error states:

THE TRIAL COURT'S FAILURE TO MERGE THE CONVICTIONS ON COUNTS II, III AND IV FOR THE PURPOSES OF SENTENCING PURSUANT TO R.C. §2941.25, OHIO'S ALLIED OFFENSES STATUTE WAS ERROR.

Case No. 18 CO 0033

{¶56}   Appellant argues that the trial court sentenced him to consecutive prison sentences for allied offenses of similar import in two ways.  First, he argues his three drug possession convictions are allied offenses of similar import.   Second, he argues his possession of heroin and trafficking of heroin convictions are allied offenses of similar import.

{¶57}   Pursuant to the allied offenses of similar import statute, "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." R.C. 2941.25(A).  But if the conduct constitutes two or more offenses that are of dissimilar import, the conduct results in two or more offenses committed separately, or if there is separate animus as to each offense, the indictment may contain counts for all such offenses and the defendant may be convicted of all of them.  R.C. 2941.25(B).

{¶58}   Offenses are of dissimilar import pursuant to R.C. 2941.25(B) if "the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 26.  The allied offenses analysis is dependent upon the facts of each case because R.C. 2941.25 focuses on the defendant's conduct.  *Id.*

{¶59}   Beginning with appellant's three drug possession convictions, he argues that under *Ruff*, these convictions are allied offenses of similar import because: they all involved possessing drugs which requires the same intent, the victim in all of the convictions was society in general, the harm for each individual drug is arguably equivocal, and the offenses were committed at the same time.

{¶60}   In response, the state cites this court's decision in *State v. Hunt*, 7th Dist. Jefferson No. 17 JE 0012, 2018-Ohio-815.  In *Hunt*, this court held that because the legislature classified and penalized possession of cocaine and possession of heroin differently, it would "defeat the legislature's intent to merge the drug possession offenses into a single offense for purposes of sentencing." *Id.* at ¶ 17 quoting *State v. Hughes*, 5th Dist. Coshocton No. 15CA0008, 2016-Ohio-880.

{¶61}   Other courts have held similarly to our decision in *Hunt*. *State v. Johnson*, 6th Dist. Ottawa No. OT-13-022, 2014-Ohio-1558; *State v. Williams*, 4th Dist. Scioto No.

11CA3408, 2012-Ohio-4693; *State v. Helmick*, 9th Dist. Summit No. 27179, 2014-Ohio-4187. Based on authority from this court and other appellate districts, appellant's drug possession convictions are based on separate drugs and are, therefore, of dissimilar import.

{¶62} As for appellant's argument that his convictions for possession of heroin and trafficking of heroin should have merged, the Ohio Supreme Court has previously held that drug possession pursuant to R.C. 2925.11(A) and drug trafficking pursuant to R.C. 2925.03(A)(1) are not allied offenses of similar import. *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, ¶ 29. Therefore, these convictions are also of dissimilar import. Based on the above, the trial court did not sentence appellant to consecutive sentences for allied offenses of similar import.

{¶63} Accordingly, appellant's third assignment of error is without merit and is overruled.

{¶64} Appellant's fourth assignment of error states:

> THE COURT ERRED BY IMPOSING CONSECUTIVE PRISON SENTENCES TOTALING THIRTY-ONE (31) YEARS CONTRARY TO LAW AND THE CONSTITUTIONAL PROHIBITIONS AGAINST CRUEL AND UNUSUAL PUNISHMENT.

{¶65} Appellant argues that the imposition a 31-year sentence when he was 40 years old at the time of sentencing is tantamount to a life sentence and is, therefore, a violation of his right to be free from cruel and unusual punishment.

{¶66} The Eighth Amendment to the Constitution of the United States and Section 9, Article I of the Ohio Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." In *State v. Weitbrecht*, 86 Ohio St.3d 368, 715 N.E.2d 167 (1999), the Ohio Supreme Court observed:

> Historically, the Eighth Amendment has been invoked in extremely rare cases, where it has been necessary to protect individuals from inhumane punishment such as torture or other barbarous acts. Over the years, it has

also been used to prohibit punishments that were found to be disproportionate to the crimes committed. In *McDougle v. Maxwell*, 1 Ohio St.2d 68, 30 O.O.2d 38, 203 N.E.2d 334 (1964), this court stressed that Eighth Amendment violations are rare. We stated that "[c]ases in which cruel and unusual punishments have been found are limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person." Furthermore, "the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community."

*Id.* at 370-371 (internal citations omitted).

{¶67} In order to determine whether the sentence imposed is disproportionate to the offense committed, a tripartite analysis is employed. "First, we look to the gravity of the offense and the harshness of the penalty * * *. Second, it may be helpful to compare the sentences imposed on other criminals in the same jurisdiction. If more serious crimes are subject to the same penalty, or to less serious penalties, that is some indication that the punishment at issue may be excessive. * * * Third, courts may find it useful to compare the sentences imposed for commission of the same crime in other jurisdictions." *Id.* quoting *Solem v. Helm*, 463 U.S. 277, 290-291, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).

{¶68} Appellant concedes that he was convicted of serious crimes deserving of a proportionate sentence. But he argues that his 31-year sentence, the maximum sentence he could have received, should shock the conscience of the community.

{¶69} Appellant does not cite any case law to support his argument that his sentence is so disproportionate to be shocking to a reasonable person or shocks the sense of justice to the community. Appellant also does not cite any case law from this district or other jurisdictions which indicate that his sentence is excessive. Appellant pled no contest to serious crimes including possessing large quantities of various drugs and trafficking those same drugs. In addition to the large quantities of various drugs, appellant is a felon who was in possession of firearms. Because of the severity of the crimes appellant was convicted of, it cannot be said that his sentence is disproportionate to his offenses.

Case No. 18 CO 0033

{¶70} As for appellant's sentence itself, the applicable third-degree felony sentencing statute for appellant's convictions is R.C. 2929.14(A)(3)(b). Pursuant to this statute, third-degree felonies are punishable by up to 36 months. The applicable first-degree felony sentencing statute for appellant's convictions is R.C. 2929.14(A)(1)(b). Pursuant to this statute, first-degree felonies are punishable by up to 11 years. Thus, appellant's sentence on each individual count falls within statutory mandates.

{¶71} As for consecutive sentences, R.C. 2929.14(C)(4) requires a trial court to make specific findings when imposing consecutive sentences:

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶72} It has been held that although the trial court is not required to recite the statute verbatim or utter "magic" or "talismanic" words, there must be an indication that the court found (1) that consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) that consecutive sentences are not

disproportionate to the seriousness of the offender's conduct and to the danger posed to the public, and (3) one of the findings described in R.C. 2929.14(C)(4)(a), (b), or (c). *State v. Bellard*, 7th Dist. Mahoning No. 12-MA-97, 2013-Ohio-2956, ¶ 17. However, the court need not give its reasons for making those findings. *State v. Power*, 7th Dist. Columbiana No. 12 CO 14, 2013-Ohio-4254, ¶ 38.

**{¶73}** The Ohio Supreme Court has held that the trial court must make its findings at the sentencing hearing and not simply in the sentencing judgment entry:

> In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings.

*State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. The court stressed the importance of making the findings at the sentencing hearing, noting this gives notice to the offender and to defense counsel. *Id.* at ¶ 29. The trial court should also incorporate its statutory findings into the sentencing entry. *Id.* at ¶ 30.

**{¶74}** The transcript of the sentencing hearing must make it "clear from the record that the trial court engaged in the appropriate analysis." *State v. Hill,* 7th Dist. Carroll No. 13 CA 82, 2014-Ohio-1965, ¶ 27.

**{¶75}** At sentencing, the trial court found that "consecutive sentences are necessary to protect the public from future crime, to punish the offender, that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger he poses to the public." (Sent. Tr. 62). The trial court also found that at least two of appellant's offenses were committed as part of one or more courses of conduct and the harm was so great or unusual that no single prison term adequately reflected the seriousness of appellant's conduct. These findings are also reflected in the trial court's October 15, 2018 judgment entry. Thus, the trial court made the appropriate consecutive sentence findings.

**{¶76}** In conclusion, appellant's sentence is not cruel or usual and his sentence complies with all other statutory requirements.

{¶77}   Accordingly, appellant's fourth assignment of error is without merit and is overruled.

{¶78}   For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, P. J., concurs.

Robb, J.,   concurs.

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**